1  Scott J. Street (SBN 258962)
   **JW HOWARD/ATTORNEYS, LTD.**
2  201 South Lake Avenue, Suite 303
3  Pasadena, CA 91101
   Tel.: (213) 205-2800
4  Email: sstreet@jwhowardattorneys.com

5  John W. Howard (SBN 80200)
   Andrew G. Nagurney (SBN 301894)
6  **JW HOWARD/ATTORNEYS, LTD.**
7  600 West Broadway, Suite 1400
   San Diego, CA 92101
8  Tel.: (619) 234-2842
9  Email: johnh@jwhowardattorneys.com

10
11 Attorneys for Plaintiff,
   ROBERT F. KENNEDY, JR.

12
13                 **UNITED STATES DISTRICT COURT**

14                **NORTHERN DISTRICT OF CALIFORNIA**

15 ROBERT F. KENNEDY, JR.,              Case No. 5:23-cv-03880-NC

16              Plaintiff,              [Assigned to the Hon. Nathanael
                                        Cousins]
17         vs.
                                        **APPLICATION FOR TEMPORARY**
18 GOOGLE LLC, a Delaware               **RESTRAINING ORDER;**
   corporation, and YOUTUBE, LLC, a     **MEMORANDUM OF POINTS AND**
19 Delaware corporation,                **AUTHORITIES IN SUPPORT**

20              Defendants.             [Filed concurrently with Declarations of
                                        Robert F. Kennedy, Jr., Amaryllis
21                                      Kennedy and Scott J. Street; [Proposed]
                                        TRO and [Proposed] OSC lodged
22                                      concurrently]

23
24 ///
25 ///
26 ///
27 ///
28                                        1

APPLICATION FOR TRO AND MEMO. OF POINTS & AUTHORITIES        CASE NO. 5:23-cv-03880-NC

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Plaintiff Robert F. Kennedy, Jr., hereby applies to the Court for an order temporarily restraining Defendants Google LLC and YouTube, LLC, from using their "medical misinformation" policies to remove videos of Mr. Kennedy's speech on matters of public concern from YouTube during the 2024 presidential campaign. Mr. Kennedy also applies to the Court for an order to show cause regarding the issuance of a preliminary injunction for the same relief pending a trial on the merits.

This application is made pursuant to Rule 65 of the Federal Rules of Civil Procedure. It is based on this application, the concurrently filed memorandum of points and authorities and declarations signed by Mr. Kennedy, Amaryllis Kennedy and Scott J. Street, as well any further evidence and argument as may be presented.

There is good cause to grant this relief. The First Amendment prohibits the government from censoring Mr. Kennedy based on the content of his speech. The First Amendment, buttressed by the state action doctrine, also prohibits the government from using a third party like Google to censor Mr. Kennedy. That is what happened here and what warrants this extraordinary relief.

DATED:  August 9, 2023          JW HOWARD/ATTORNEYS, LTD.


By:  */s Scott J. Street*
     John W. Howard
     Scott J. Street
     Andrew G. Nagurney
     Attorneys for Plaintiff
     ROBERT F. KENNEDY, JR.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

# TABLE OF CONTENTS

I.     INTRODUCTION…………………………………………….…….…8

II.    FACTS………………………………………………………………9

III.   LEGAL STANDARD………………………………………………...12

IV.    ARGUMENT…………………………………………………………13

    A.    The State Action Doctrine Applies When the Government Tells
          Google What Information to Censor, Especially Under These
          Circumstances…………………………………………………………13

    B.    Kennedy Is Likely to Prevail on the Merits. …………………………..18

    C.    Even Temporary First Amendment Violations Cause Irreparable
          Harm…………………………………………………………………22

    D.    The Balance of Harms Strongly Supports Granting the Application…...22

    E.    The Court Should Set an Expedited Hearing and, if Necessary, Allow
          Limited Discovery Before Entering a Preliminary Injunction…………23

V.     CONCLUSION………………………………………………………..24

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*A.C.L.U. of Nev. v. City of Las Vegas*,
    466 F.3d 784 (9th Cir. 2006)…………………………………….………19

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) …………………………………….……..12

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) ………………………………….……23

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002) ……………………………………………………………9

*Berger v. City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009) …………………………………….…..21

*Beshear v. Butt*,
    863 F. Supp. 913 (E.D. Ark. 1994) …………………………………………..20

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ……………………………………………….…….19

*Broderick v. Oklahoma*,
    413 U.S. 601 (1972). …………………………………………….…….21

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) …………………………………………………….14

*Bullfrog Films, Inc. v. Wick*,
    847 F.2d 502 (9th Cir. 1988) ……………………………………………….21

*Butler v. Ala. Judicial Inquiry Comm'n*,
    111 F. Supp. 2d 1224 (M.D. Ala. 2000). ………………….………………20

*Doe v. Harris*,
    772 F.3d 563 (9th Cir. 2014) ……………………………….…….……..22

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

*Elrod v. Burns*,

    427 U.S. 347 (1976) ………………………………………..…………….22

*Flores v. Bennett*,

    635 F. Supp. 3d 1020 (E.D. Cal. 2022). …………………………………22, 23

*Foti v. City of Menlo Park*,

    146 F.3d 629 (9th Cir. 1998) ……………………………………………21

*Grayned v. City of Rockford*,

    408 U.S. 104 (1972). ……………………………………………………21

*Goichman v. Rheuban Motors, Inc.*,

    682 F.2d 1320 (9th Cir. 1982) ………………………..……………….15

*Howerton v. Gabica*,

    708 F.2d 380 (9th Cir. 1983) …………………..…..………………13, 15

*Index Newspapers, LLC v. City of Portland*,

    474 F. Supp. 3d 1113 (D. Or. 2020) ……………………………..………12

*Kirtley v. Rainey*,

    326 F.3d 1088 (9th Cir. 2003) …………………………………..……13

*Lee v. Katz*,

    276 F.3d 550 (9th Cir. 2002) ……………………………………..……14

*Lugar v. Edmondson Oil Co.*,

    457 U.S. 922 (1982). ……………………………………..…..14, 18

*Manhattan Cmty. Access Corp. v. Halleck*,

    -- U.S. --, 139 S. Ct. 1921 (2019)…………………………………..………13

*McIntyre v. Ohio Elections Comm'n*,

    514 U.S. 334 (1995)……………………………………………………19

*Mills v. Alabama*,

    384 U.S. 214 (1966)……………………………………………………19

*Missouri et al. v. Biden et al.*,

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

No. 3:22-cv-01213-TAD-KDM……………………………………….……..11

*Missouri v. Biden*,

    -- F. Supp. 3d --, 2023 WL 4335270 (W.D. La. July 4 2023)…………...…11, 16

*New York Times Company v. Sullivan*,

    376 U.S. 254 (1964)……………………………………………..…20

*O'Handley v. Padilla*,

    579 F. Supp. 3d 1163 (N.D. Cal. 2022)………………………………..15, 17-18

*Rawson v. Recovery Innovations, Inc.*,

    975 F.3d 742 (9th Cir. 2020)……………………………………...…14, 18

*Recycle for Change v. City of Oakland*,

    856 F.3d 666 (9th Cir. 2017)………………………………………..………19

*Reed v. Town of Gilbert, Ariz.*,

    576 U.S. 155 (2015)……………………………………………..………..19

*Rosenberger v. Rector & Visitors of Univ. of Va.*,

    515 U.S. 819 (1995)……………………………………………………13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

    240 F.3d 832 (9th Cir. 2001)………………………………………...………12

*Thalheimer v. City of San Diego*,

    645 F.3d 1109 (9th Cir. 2011)…………………………………….……..12

*Thornton v. Kroger Co.*,

    No. CIV 20-1040 JB/JFR, 2022 WL 488932 (D.N.M. Feb. 17, 2022)….….….18

*U.S. WeChat Users Alliance v. Trump*,

    488 F. Supp. 3d 912 (2020)…………………………………..……………12-13

*Warsoldier v. Woodford*,

    418 F.3d 989 (9th Cir. 2005)…………………………………..………………22

*Winter v. Natural Resources Defense Council, Inc.*,

    555 U.S. 7 (2008)……………………………………..…………………12

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

**Statutes and Codes**                                           **Page(s)**

47 U.S.C. § 230(c)(1)……………………………………………….…..…..……..23

**Other**

Alexander M. Bickel, *The Morality of Consent* 62 (2d ed. 1975)…………………20, 22

APPLICATION FOR TRO AND MEMO. OF POINTS & AUTHORITIES         CASE NO. 5:23-cv-03880-NC

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Supreme Court has made clear that, when it comes to the political process, content-based restrictions on speech are never allowed. They stifle speech. They distort the marketplace of ideas. They prevent the robust debate on which American democracy depends.

That principle is being undermined in the 2024 campaign. Robert F. Kennedy, Jr., is an accomplished lawyer, the son of an attorney general, the nephew of a president. He is challenging Joe Biden for the Democratic Party's presidential nomination. Yet Mr. Kennedy is regularly censored in the media, including on YouTube, which has removed videos of his speeches and interviews.

The First Amendment clearly prohibits the government from censoring Mr. Kennedy. But that does not end the analysis. The First Amendment, combined with the state action doctrine, also bars a private party like Google (which owns YouTube) from censoring Mr. Kennedy when it relies on a government policy to do so.

That is the case here. Google cites its "vaccine misinformation policy" when it removes videos of Kennedy from YouTube. That policy looks entirely to the government to decide what to censor. It does not permit speech that "contradicts" the government's statements or which the government deems dangerous. Thus, the government's beliefs provide the rule of decision. That alone satisfies the state action doctrine and causes the misinformation policy to violate the First Amendment.

That is not the only reason, though. As documents discovered in other litigation have revealed, Google worked with the federal government during the COVID-19 pandemic to create, implement and enforce the vaccine misinformation policy. They described their relationship as a "partnership" in which Google shared the government's censorship goals. A public-private partnership to combat speech that the government does not want Americans to hear violates the First Amendment,

especially when done in the coercive environment created by the Biden Administration.

Americans may agree with Mr. Kennedy's views. They may disagree with them. They may select Kennedy as the Democratic Party's nominee or reject him at the ballot box. Whatever the case, our Constitution requires that voters have an unfettered chance to hear Mr. Kennedy speak. That is the only way they can make an educated decision when exercising their right to vote.

We instinctively think of the First Amendment as protecting the speaker. But it is the *listener* for whom the Founders wrote the First Amendment. "The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). That is why speech matters.

Using government policies to remove Mr. Kennedy's political speech from YouTube violates that principle, especially when those decisions flow from a partnership that Google embraced and through which it carried out its common goal of censoring speech the government does not want Americans to hear. And, unless the Court acts, Google will continue to engage in this unconstitutional action during the 2024 campaign. The danger to political discourse cannot be overstated. Therefore, the Court should issue an order preliminary enjoining Google from removing any videos of Mr. Kennedy based on its medical misinformation policies.

## II.   FACTS

Mr. Kennedy is a lawyer, a son of former Attorney General Robert F. Kennedy and a nephew of former President John F. Kennedy. Mr. Kennedy is seeking the Democratic Party's nomination for president, having declared his candidacy on April 19, 2023. Declaration of Scott J. Street, dated August 9, 2023 ("Street Decl."), ¶ 3.

Before announcing his campaign, Mr. Kennedy took a strong stance against the Democratic National Committee's effort to strip New Hampshire of its "First in the

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Nation" primary. *Id.* He accepted an invitation to speak about that and other issues at Saint Anselm College's New Hampshire Institute of Politics ("NHIOP") in March. *Id.* His speech, which was viewed as a political speech and attended by several prominent New Hampshire Democrats, including the chairman of New Hampshire's Democratic Party, lasted nearly two hours. *Id.*, ¶¶ 3-4. It centered on Mr. Kennedy's concerns about the corrupt merger of corporate and state power, a danger he has fought for years and which, in recent years, caused him to question the increasing number of vaccines American children are required to take. *Id.*, ¶ 4.

Manchester Public Television posted a video of Mr. Kennedy's speech on YouTube. *Id.*, ¶ 5. Google removed it. *Id.* The station's director said: "YouTube will not allow us to post the video because of controversial vaccination content. MPTS has recorded more than 100 wonderful NHIOP events, and I cannot recall this happening before." *Id.*, Exh. A.

Mr. Kennedy complained about the action, particularly since his comments about vaccine safety only consumed a portion of the NHIOP speech (in other parts he spoke about his environmentalism and legal work fighting corporate polluters, among other things). *Id.,* ¶ 6. Google refused to change its position. It said it "removed the [Kennedy speech] for violating our policies on COVID-19 vaccine misinformation …. While we do allow content with educational, documentary, scientific or artistic context, such as news reports, the content we removed from this channel was raw footage and did not provide sufficient context." *Id.*, Exh. B.

Google has removed other videos of Kennedy since he announced his candidacy on April 19, including interviews he did with Jordan Peterson and Joe Rogan. Declaration of Robert f. Kennedy, Jr., dated August 8, 2023 ("RFK Decl."), ¶ 4; Declaration of Amaryllis Kennedy, dated August 8, 2023 ("A. Kennedy Decl."), ¶¶ 4-5, Exh. A. Again, although Google cited its vaccine misinformation policy to justify these decisions, it removed the entire video. *Id.*

Mr. Kennedy complained to Google about these matters. A. Kennedy Decl., ¶ 8. But unlike Facebook and Twitter, Google has continued to use its misinformation policies (primarily the vaccine policy) to remove Kennedy's political speech from YouTube. RFK Decl., ¶ 4.  It will continue to do so throughout the 2024 campaign. Indeed, despite repeated requests from his campaign, Google has not allowed Kennedy to control the biographical information that it displays for him in response to user searches, something it gives to other political candidates. A. Kennedy Decl., ¶ 8.

This is just one of the many obstacles that Mr. Kennedy has had to deal with during the campaign. But it has a huge impact. During the early stages of the 2016 campaign—say between April 2015 and March 2016—YouTube users consumed roughly 110 million hours of election-related content on YouTube, much of which was viewed on mobile devices. Street Decl., Exh. E. Kate Stanford, the director of YouTube's advertiser marketing at the time, made much of that, saying: "Voter decisions used to be made in living rooms, in front of televisions. Today, they're increasingly made in micro-moments, on mobile devices." *Id.*

Thus, YouTube has become an important platform for political campaigns, especially when it comes to raw content like candidate interviews and speeches, which used to be seen primarily on television. RFK Decl., ¶¶ 5-6; A. Kennedy Decl., ¶¶ 6-8. YouTube is an especially important platform for Mr. Kennedy, who many mainstream media outlets have simply refused to cover and who congressional Democrats recently tried to censor (at a hearing on censorship, no less). *Id.*; Street Decl., ¶ 32, Exhs. Q, R.

Kennedy has repeatedly asked Google to stop applying its misinformation policies to censor him during the presidential campaign. A. Kennedy Decl., ¶ 8. It refused. *Id.* That led to the filing of this case. It comes on the heels of a similar case that was filed in Louisiana by two state attorneys general, *Missouri et al. v. Biden et al.*, No. 3:22-cv-01213-TAD-KDM (the "State AG Censorship Case"). On July 4, Judge Terry Doughty issued a lengthy decision that enjoins federal government

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

officials from coercing technology companies to censor the government's critics. Street Decl., ¶ 12. The injunction does not bind the technology companies themselves, though, and thus does not prohibit Google from continuing to censor Mr. Kennedy based on the misinformation policies it developed with the government. *Id.*

The government appealed the decision in the State AG Censorship Case to the Fifth Circuit Court of Appeals, which will hear argument tomorrow. *Id.*, ¶ 13.

## III.   **LEGAL STANDARD**

The same standard that governs requests for a preliminary injunction applies to applications for a temporary restraining order. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The moving party usually "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). But in this context, "the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government [or, here, a third party accused of engaging in state action] to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

There is also a lower standard that the Ninth Circuit has used to grant temporary relief when the moving party raises "serious questions going to the merits" and shows that "the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Courts in this circuit often use the "serious questions" test instead of the *Winter* test when the case involves First Amendment rights. *See, e.g., Index Newspapers, LLC v. City of Portland*, 474 F. Supp. 3d 1113, 1125 (D. Or. 2020) (applying serious questions test, instead of *Winter*, to grant TRO in First Amendment case brought by media); *U.S. WeChat Users*

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1  *Alliance v. Trump*, 488 F. Supp. 3d 912, 916 (2020) (applying serious questions test to

2  grant injunction in First Amendment case brought by people using WeChat app).

3      **IV.    ARGUMENT**

4      The Court should grant the application because Google violates the First

5  Amendment when it removes video of Mr. Kennedy based on misinformation policies

6  that rely entirely on the government to decide what speech to censor and because the

7  public and private interests at stake weigh heavily in favor of allowing robust debate

8  on these matters of public concern.

9      **A. The State Action Doctrine Applies When the Government Tells Google**

10     **What Information to Censor, Especially Under These Circumstances.**

11     As explained below, there is no doubt that Google's medical misinformation

12 policies would violate the First Amendment if they were issued by the government.

13 After all, they make distinctions about which speech is allowed on YouTube based on

14 the speech's content. "It is axiomatic that the government may not regulate speech

15 based on its substantive content or the message it conveys." *Rosenberger v. Rector &*

16 *Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Thus, Google's primary argument

17 will be that, unlike the government, *it* can decide which speech to allow, or not allow,

18 on YouTube based on its content. It is wrong.

19     A "private entity is not ordinarily constrained by the First Amendment …."

20 *Manhattan Cmty. Access Corp. v. Halleck*, -- U.S. --, 139 S. Ct. 1921, 1930 (2019).

21 But it may be sued for violating a person's constitutional rights under certain

22 circumstances. Under Ninth Circuit law, "there is no specific formula for defining

23 state action." *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) (quotations

24 omitted). But the court recognizes "at least four different criteria, or tests, used to

25 identify state action: (1) public function; (2) joint action; (3) government compulsion

26 or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th

27 Cir. 2003) (cleaned up).

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1    Whatever test is used, this analysis is "necessarily fact-bound …." *Lugar v.*

2  *Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). It focuses on deciding whether

3  "seemingly private behavior may be fairly treated as that of the State itself."

4  *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)

5  (quotations omitted).

6    *Brentwood* represented a sea change in the Supreme Court's state action

7  jurisprudence. It stopped the narrowing of the doctrine that had developed since the

8  1980s and moved the doctrine back to the functional analysis that Justice Brennan had

9  urged in cases like *Blum v. Yaretsky*, 457 U.S. 991, 1013 (1982) (Brennan and

10  Marshall, JJ., dissenting). The Ninth Circuit did the same thing. For example, in *Lee v.*

11  *Katz*, 276 F.3d 550 (9th Cir. 2002), the court reversed a district court's decision that

12  found no state action in a case brought by preachers against a private party (the

13  "OAC") who leased land (the "Commons") from the City of Portland. The OAC had

14  occasionally excluded the preachers from preaching on the land, a plaza near

15  Portland's basketball arena. The City played no role in excluding the preachers from

16  the property: the OAC, a private entity, made that decision for its own reasons. *Id.* at

17  552-53. But the court "conclude[d] that, in regulating speech within the Commons, the

18  OAC performs an exclusively and traditionally public function within a public

19  forum." *Id.* at 557. That satisfied the state action doctrine.

20    Similarly, in *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir.

21  2020), the Ninth Circuit reversed a grant of summary judgment for the defendant, a

22  private entity that operated a private hospital, which the plaintiff sued after he was

23  involuntarily committed at the hospital. The Court emphasized that, "[a]t bottom, the

24  inquiry is always whether the defendant has exercised power possessed by virtue of

25  state law and made possible only because the wrongdoer is clothed with the authority

26  of state law." *Id.* at 748 (quotations omitted). And it concluded that the private health

27  care workers could potentially be held liable as state actors because a "county

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

prosecutor played an outsized role in the duration of [the plaintiff's] detention" at the private facility. *Id.* at 754.

Other examples abound, including a case in which the Ninth Circuit found a private towing company to be a state actor because it acted "at the behest of a police officer," *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982), and a case in which the Ninth Circuit found potential joint action between a landlord and police officers based on their joint and repeated efforts to evict one of the landlord's tenants, *Howerton*, 708 F.2d at 385.

Google's actions in removing Kennedy's speeches and interviews from YouTube satisfy several of these state action tests. First, Mr. Kennedy has obtained evidence that government officials were the ones who directed Google and other technology companies to censor him. Street Decl., Exhs. F-P. They did so not as part of a one-way information sharing agreement like the one involved in *O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022), affirmed 62 F.4th 1145 (9th Cir. 2023), but through a deeply intertwined partnership in which the government tells Google what information (and, in Kennedy's case, who) to censor and Google delivers. Street Decl., Exhs. F-P.

Judge Doughty discussed this alliance of government and corporate power in the State AG Censorship Case when he applied the state action doctrine to enjoin government officials from working with technology companies to remove alleged misinformation from social media. For example, with respect to Google/YouTube, Judge Doughty described several acts of coordination that raised constitutional problems, including:

- An April 21, 2021, meeting between YouTube officials and White House advisers Rob Slavitt and Andrew Flaherty about "general trends seen around vaccine misinformation, the effects of YouTube's efforts to combat misinformation, interventions YouTube was trying, and ways the

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

White House can 'partner' [with YouTube] in product work." *Missouri v. Biden*, -- F. Supp. 3d --, 2023 WL 4335270, at *9 (W.D. La. July 4 2023).

- An April 22, 2021, email in which Flaherty recapped the prior day's meeting and said that the White House's efforts to remove alleged COVID misinformation from YouTube was "'shared at the highest (and I mean the highest) levels of the White House.'" *Id.* at *10.

- Regular meetings between Google/YouTube executives and White House officials about removing alleged COVID misinformation from YouTube, as they had done with other "platform partners" like Facebook and Twitter. *Id.*

- Emails sent between the Surgeon General's office and Google/YouTube about the Surgeon General's goal "to stop the spread of misinformation" in cyberspace, in response to which "YouTube eventually adopted a new policy on combatting COVID-19 misinformation and began providing federal officials with updates on YouTube's efforts to combat the misinformation." *Id.* at *15.

- A July 30, 2021, meeting between Google/YouTube executives and officials from the Surgeon General's office in which "Google and YouTube reported to Office of the Surgeon General what actions they were taking following the Surgeon General's health advisory on misinformation." *Id.*

- A September 14, 2021, meeting between Google/YouTube executives, White House adviser Flaherty and the Surgeon General's office "to discuss" the new vaccine misinformation policy policy that the executives and the government developed. *Id.*

Judge Doughty also described how the CDC and Census Bureau have regular

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

meetings with Google/YouTube about removing alleged medical misinformation which "continue[ ] to the present day." *Id.* at *22. And he discussed the role that FBI agent Elvis Chan plays in the public-private censorship project. Chan, who is based in the FBI's field office in San Francisco, testified that the FBI is part of an "industry working group" that includes Google/YouTube and which works with federal agencies to remove alleged misinformation online. *Id.* at *27-28. Chan said that these meetings occurred throughout 2022 and "will continue through the 2024 election cycle." *Id.* at *28.

Judge Doughty had no problem finding these actions to constitute state action, and to violate the First Amendment, because at least some of the government officials "either exercised or provided significant encouragement, which resulted in the possible suppression of Plaintiffs' speech." *Id.* at *42; *see also id.* at *48 (emphasizing that both White House officials and tech executives referred to themselves as "'partners' and 'on the same team' in their efforts to censor disinformation, such as their efforts to censor 'vaccine' hesitancy"). Indeed, Judge Doughty concluded that federal government officials "aligned themselves with and partnered with" third parties like Google "to avoid Government involvement with free speech" that would clearly violate the First Amendment. *Id.* at *52.

This is exactly the type of conduct that the state action doctrine was designed to prevent. We are not the only ones who think so. Despite affirming the dismissal of a censorship lawsuit brought against Twitter, the Ninth Circuit acknowledged that "[a] constitutional problem would arise if [a technology company like] Twitter had agreed to serve as an arm of the government, thereby fulfilling the State's censorship goals." *O'Handley*, 62 F.4th at 1159. That is exactly what Google is doing to Mr. Kennedy.

In fact, Google's actions are worse than the actions alleged in *O'Handley*. It is using a policy that it developed in connection with (and in response to demands from) the incumbent government to silence one of the government's most prominent critics,

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

someone who is targeting the corrupt merger of state and corporate power and who has vowed to dismantle the corporate/administrative state if elected.

Google's actions would satisfy even the strictest of the state action tests: the "rule of decision" test discussed in *Lugar*. After all, Google's medical misinformation policies rely *entirely* on the government. Street Decl., Exhs. C, D. They prohibit speech that "contradicts" government statements and which the government deems dangerous *Id.* The vaccine misinformation policy itself appears to have been written jointly by Google and government officials (and in response to government demands for it) during the summer of 2021. Street Decl., Exhs. F-K. Even if Google itself decides when to remove such dissent—and, in Mr. Kennedy's case, the evidence suggests otherwise—that does not matter, as "a single act of independent judgment does not fully insulate a private party from constitutional liability when the party is otherwise deeply intertwined with the government …." *O'Handley*, 579 F. Supp. 3d at 1158 n.2 (citing *Rawson*); *cf. Thornton v. Kroger Co.*, No. CIV 20-1040 JB/JFR, 2022 WL 488932, at *61 (D.N.M. Feb. 17, 2022) (noting that state action cases often involve "a substantial degree of cooperative action" or showing that state and private actors "shared a common, unconstitutional goal" (quotations omitted)).

Moreover, the State AG Censorship Case has already uncovered evidence of White House officials pressuring technology companies to censor Kennedy. Street Decl., Exh. P. This started within days of President Biden's inauguration. *Id.* Discovery will likely reveal more of this, including evidence that the White House's targeting of Mr. Kennedy for censorship increased after he challenged the president.

Thus, Mr. Kennedy is likely to prevail on his argument that Google can be held liable under the state action doctrine for removing his speech based on its content.

**B. Kennedy Is Likely to Prevail on the Merits.**

Mr. Kennedy is also likely to prevail on his claim that the act of removing his speech from YouTube because of its content violates the First Amendment.

Under the First Amendment, the government "has no power to restrict expression because of its messages, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quotations omitted). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 165 (quotations omitted). A law is content based if it "draws distinctions based on the message a speaker conveys." *Recycle for Change v. City of Oakland*, 856 F.3d 666, 670 (9th Cir. 2017). Such restrictions are "presumptively invalid" and can be upheld only if they represent "the least restrictive means of furthering a compelling government interest." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006).

Viewpoint discrimination that occurs in the political process is especially noxious. The First Amendment "affords the broadest protection" possible to political speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346-47 (1995). "Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). "Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day." *Buckley v. Valeo*, 424 U.S. 1, 52-53 (1976) (per curiam).

It does not matter that some people may find the affected speech to be dangerous, misleading, or even false (although the comments that Mr. Kennedy makes that usually get censored are true statements or opinions that the government says are misleading or lack "context"). "The social interest that the First Amendment vindicates is … the interest in the successful operation of the political process, so that

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

the country may be better able to adopt the course of action that conforms to the wishes of the greatest number, whether or not it is wise or is founded in truth." Alexander M. Bickel, *The Morality of Consent* 62 (2d ed. 1975) (hereafter "Bickel"). Echoing that principle, "the Supreme Court has relied on the strong presumption that First Amendment protections have little to do with the caliber and quality of the speech involved, but … with the broad protection of the speech itself in order to encourage a robust exchange of ideas in political campaigns for elected office." *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1238 (M.D. Ala. 2000).

Thus, in *Butler*, a court invalidated a judicial canon that prohibited candidates from disseminating "true information about a judicial candidate or an opponent that would be deceiving or misleading to a reasonable person." *Id.* at 1233. The court noted the "difficulties [that] arise in ascertaining when the dissemination of 'true information' should be deemed 'deceiving or misleading'" including the fact that "[w]hat is 'deceiving or misleading' to one reasonable person may not necessarily be 'deceiving or misleading' to another reasonable person." *Id.* at 1237. Similarly, in *Beshear v. Butt*, 863 F. Supp. 913, 916-17 (E.D. Ark. 1994), a court found that a judicial canon that prohibited candidates from "announcing views on disputed legal or political issues" was "substantially overbroad and vague" and thus violated the First Amendment. (Cleaned up.)

And, of course, in *New York Times Company v. Sullivan*, 376 U.S. 254, 271 (1964), the Supreme Court held that the First Amendment guarantees the right to lie, saying: "Authoritative interpretations of the First Amendment guarantees have consistently refused to recognize an exception for any test of truth—whether administered by judges, juries, or administrative officials—and especially one that puts the burden of proving truth on the speaker." That is true especially in the political process and "even though the utterance contains 'half-truths' and 'misinformation.'" *Id.* at 273.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

The government-guided censorship of Mr. Kennedy on YouTube violates these settled principles. It is content-based discrimination of speech that does not satisfy strict scrutiny. *See Berger v. City of Seattle,* 569 F.3d 1029, 1050-52 (9th Cir. 2009) (explaining why strict scrutiny governs this analysis). Regardless of the reason Google and its government partners cite for censoring people who disagree with the government about medical issues, their misinformation policies are unconstitutionally vague because they do not "give a person of ordinary intelligence a reasonable opportunity to know what is prohibited" and because they encourage "arbitrary and discriminatory enforcement." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Indeed, although Google often removes high-profile videos of Mr. Kennedy from YouTube, such as the Rogan and Peterson interviews, it does not remove them all. A. Kennedy Decl., ¶ 4. That arbitrary enforcement undermines the misinformation policies' supposed necessity and creates a chilling effect that the Supreme Court has applied the vagueness doctrine strictly to avoid. *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 512 (9th Cir. 1988); *see also Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998) (noting that "when First Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required").

The misinformation policies also violate the overbreadth doctrine, as their "very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broderick v. Oklahoma*, 413 U.S. 601, 612 (1972). This interest is particularly acute here as Google does not just use its misinformation policies to remove government dissent from YouTube: it reserves the right to sanction the people who post the speech. Street Decl., Exhs. C, D. And it has removed content, including Kennedy's NHIOP speech, because it "was raw footage and did not provide sufficient context." *Id.*, Exh. D. Thus, the policies will likely be used to censor constitutionally protected speech during the 2024 campaign.

In sum, Mr. Kennedy will likely prevail on his argument that the medical

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 West Broadway, Suite 1400
San Diego, California 92101

misinformation policies that Google developed with the government, and which Google has cited to remove Kennedy's political speech from YouTube, violate the First Amendment. At minimum, there are serious questions about the constitutionality of Google's actions in this censorship partnership which, given the political context, justify preliminary injunctive relief.

**C. Even Temporary First Amendment Violations Cause Irreparable Harm.**

There is no dispute that Mr. Kennedy will suffer irreparable harm if the Court does not order Google to stop using its government-induced misinformation policies to censor Kennedy during his political campaign. Nor could there be. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (noting that irreparable injury is often presumed when plaintiff alleges a "colorable First Amendment claim"). "Even a temporary restriction on speech an even for minimal periods of time constitutes irreparable injury." *Flores v. Bennett*, 635 F. Supp. 3d 1020, 1045 (E.D. Cal. 2022).

**D. The Balance of Harms Strongly Supports Granting the Application.**

Finally, the balance of equities tips sharply in Mr. Kennedy's favor, as does the public interest. "The Ninth Circuit has consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014); *see also* Bickel at 61 (explaining that "it is the hypothesis of the First Amendment that injury is inflicted on our society when we stifle the immediacy of speech"). Moreover, Kennedy has shown that the censorship of him on YouTube hurts his political campaign. RFK Decl., ¶¶ 5-6; A. Kennedy Decl., ¶¶ 6-8.

By contrast, Google will not suffer any harm if the Court enjoins it from enforcing the government-induced medical misinformation policies against Mr. Kennedy during his political campaign. After all, Google cannot be held liable for

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

content posted on YouTube. 47 U.S.C. § 230(c)(1). The only possible harm that Google could cite is the federal government's interest in encouraging Americans to do what it recommends about medical matters but "[t]he Supreme Court has established that the government may not proscribe speech merely because it offends someone or because it contains an unpopular viewpoint." *Flores*, 635 F. Supp. 3d at 1038.

**E. The Court Should Set an Expedited Hearing and, if Necessary, Allow Limited Discovery Before Entering a Preliminary Injunction.**

If the Court has any doubts about the propriety of the requested injunction, it should give Mr. Kennedy the chance to conduct limited discovery regarding the state action issues discussed above. *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067 (C.D. Cal. 2009) (explaining when courts find "good cause" to grant discovery in connection with motion for preliminary injunction).

The discovery would be targeted to a few subjects and would include:

- Communications between Google/YouTube executives and Executive Branch officials (especially White House, Surgeon General and CDC officials) about the new vaccine misinformation policy adopted by Google during the summer of 2021.

- Communications between Google/YouTube executives and Executive Branch officials about alleged misinformation spread by Mr. Kennedy.

- Communications between Google/ YouTube executives and Executive Branch officials about removing any videos of Mr. Kennedy from YouTube.

- Communications between Google/YouTube executives and Executive Branch officials about Mr. Kennedy's speech at the NHIOP and any other political speeches or interviews he has done during 2023.

Street Decl., ¶¶ 28-30. This discovery could be done quickly and would shed even more light on the public-private partnership that has been used to censor Mr.

Kennedy during the past two years and which, if not stopped, will be used in an unprecedented manner to prevent Americans from hearing what a viable presidential candidate says about matters of public concern.

### V.    **CONCLUSION**

For the foregoing reasons, Mr. Kennedy respectfully requests that the Court grant the application and issue the requested TRO or an order to show cause about why Google should not be enjoined from using its misinformation policies to remove Kennedy's speech on matters of public concern from YouTube during the 2024 campaign.

DATED:  August 9, 2023                    JW HOWARD/ATTORNEYS, LTD.


By:  */s Scott J. Street*
_____
John W. Howard
Scott J. Street
Andrew G. Nagurney
Attorneys for Plaintiff
ROBERT F. KENNEDY, JR.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101