JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
JULIANA M. YEE (State Bar No. 304564)
Juliana.Yee@mto.com
CARSON SCOTT (State Bar No. 339868)
Carson.Scott@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

HELEN E. WHITE (*pro hac vice*)
Helen.White@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW, Suite 500 E
Washington, DC 20001
Telephone:    (202) 220-1100
Facsimile:    (202) 220-2300

Attorneys for Defendants
Google LLC and YouTube, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT F. KENNEDY, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC AND YOUTUBE, LLC,<br><br>Defendants. | Case No. 3:23-cv-03880<br><br>**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Judge:   Hon. Trina Thompson<br>Date:    January 16, 2024<br>Time:    2:00 pm<br>Crtrm.:  9 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ...................................................................................................3

    A.     Factual Background ...................................................................................3

    B.     Procedural History ....................................................................................6

III.    LEGAL STANDARD ...........................................................................................7

IV.     ARGUMENT ........................................................................................................8

    A.     Kennedy's First Amendment Claim Once Again Fails to State a Plausible
        Claim of "State Action" ............................................................................8

        1.     Kennedy Fails to Plausibly Allege that Google, a Private Company,
            Engaged in Any "State Action"....................................................8

        2.     Kennedy Does Not Allege Any "State Action" Specifically with
            Respect to Him ...........................................................................17

    B.     Kennedy's Free Speech Claim Under the California Constitution is Barred
        by Section 230 and Fails in Any Event ...................................................18

        1.     Section 230 Bars This State Law Claim......................................19

        2.     The Free Speech Claim Fails on the Merits ................................22

    C.     Google's First Amendment Rights Bar Kennedy's Claims .....................23

V.      CONCLUSION ...................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...........................................................................7, 16

*Assocs. & Aldrich Co. v. Times Mirror Co.,*
440 F.2d 133 (9th Cir. 1971)...............................................................24

*Barnes v. Yahoo!, Inc.,*
570 F.3d 1096 (9th Cir. 2009)..............................................2, 19, 20, 21

*Blum v. Yaretsky,*
457 U.S. 991 (1982) ......................................................................10, 17

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.,*
827 F.2d 1291 (9th Cir. 1987)..........................................................11, 24

*Changizi v. Dep't of Health & Hum. Servs.,*
No. 22-3573, 2023 WL 5965931 (6th Cir. Sept. 14, 2023) .................15

*Children's Health Def. v. Facebook, Inc.,*
546 F. Supp. 3d 909 (N.D. Cal. 2021) ..............................2, 12, 14, 17

*Clark Cnty. Sch. Dist. v. Breeden,*
532 U.S. 268 (2001) .............................................................................18

*Daniels v. Alphabet, Inc.,*
No. 20-CV-04687-VKD, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)............................2, 11

*Darnaa, LLC v. Google, Inc.,*
No. 15-cv-03221-RMW, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) ...................................21

*Davison v. Facebook, Inc.,*
370 F. Supp. 3d 621 (E.D. Va. 2019), aff'd, 774 F. App'x 162 (4th Cir. 2019).......................23

*Divino Grp. LLC v. Google LLC,*
No. 19-cv-04749-VKD, 2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ............................2, 22

*Divino Grp. LLC v. Google,*
No. 19-cv-04749-VKD, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ..........................................18

*Doe v. Google LLC,*
No. 20-cv-07502-BLF, 2021 WL 4864418 (N.D. Cal. Oct. 19, 2021) ....................................14

*Domen v. Vimeo, Inc.,*
433 F. Supp. 3d 592 (S.D.N.Y. 2020) ................................................19, 22

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008) (en banc).......................................19, 20, 21

*Fed. Agency of News LLC v. Facebook, Inc.*,
  432 F. Supp. 3d 1107 (N.D. Cal. 2020) ....................................................... 2, passim

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...........................................................................7

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) ......................................................................7, 13

*Green v. YouTube, LLC*,
  No. 18-cv-203-PB 2019 WL 1428890 (D.N.H. Mar. 13, 2019) ........................21

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) ..........................................................................10

*Hart v. Facebook Inc.*,
  No. 22-CV-00737-CRB, 2022 WL 1427507 (N.D. Cal. May 5, 2022) ....................2, 12, 13, 17

*Hart v. Facebook*,
  No. 22-cv-737-CRB, 2023 WL 3362592 (N.D. Cal. May 9, 2023) ...............12, 15

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  273 F. Supp. 3d 1099 (N.D. Cal. 2017) ............................................................22

*Informed Consent Action Network v. YouTube LLC*,
  582 F. Supp. 3d 712 (N.D. Cal. 2022) ......................................................2, 11, 14, 17

*Kennedy v. Google LLC, et al.*,
  No. 23-16141 (9th Cir. Sept. 11, 2023) ..............................................................8

*Kifle v. YouTube LLC*,
  No. 21-cv-01752-CRB, 2021 WL 10331555 (N.D. Cal. Oct. 5, 2021) ...................19

*Lancaster v. Alphabet, Inc.*,
  No. 15-cv-05299-HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016) ...............19, 20

*Lee v. Katz*,
  276 F.3d 550 (9th Cir. 2002)............................................................................9

*Lewis v. U.S. Bank Nat'l Ass'n*,
  No. 16-CV-05490-JSW, 2017 WL 2903192 (N.D. Cal. Apr. 5, 2017), *aff'd sub
  nom. Lewis v. U.S. Bank Nat'l Ass'n as Tr. to Wachovia Bank, Nat'l Ass'n*, 740
  F. App'x 155 (9th Cir. 2018)............................................................................3

*Lindberg v. Wells Fargo Bank, N.A.*,
  No. C 14-2544 PJH, 2015 WL 1137634 (N.D. Cal. Mar. 13, 2015) ....................3

*Lugar v. Edmondson Oil Co.*,
  457 U.S. 922 (1982) .....................................................................................8, 9

*Mac Isaac v. Twitter, Inc.*,
  557 F. Supp. 3d 1251 (S.D. Fla. 2021)..............................................................23

*Manhattan Cmty. Access Corp. v. Halleck*,
  139 S. Ct. 1921 (2019) ................................................................................9, 10

*Mathis v. Pac. Gas & Elec. Co.*,
    75 F.3d 498 (9th Cir. 1996) .................................................................................16

*Metricolor LLC v. L'Oréal S.A.*,
    No. 2:18-cv-00364-CAS (Ex), 2020 WL 3802942 (C.D. Cal. July 7, 2020) ..............................5

*Miami Herald Pub. Co. v. Tornillo*,
    418 U.S. 241 (1974) .................................................................................3, 23

*Missouri v. Biden*,
    No. 3:22-CV-01213, 2023 WL 5841935 (W.D. La. July 4, 2023), *aff'd in part,
    rev'd in part*, No. 23-30445 (5th Cir. Oct. 3, 2023)
    .......................................................................................................6

*Missouri v. Biden*,
    No. 23-30445, 2023 WL 5821788 (5th Cir. Sept. 8, 2023), *withdrawn*, No. 23-
    30445 (5th Cir. Oct. 3, 2023) ....................................................................14

*Missouri v. Biden*,
    No. 23-30445 (5th Cir. Oct. 3, 2023) .......................................................14, 15

*Murthy v. Missouri*,
    No. 23A243 (S. Ct. Sept. 14, 2023) ...........................................................15

*NetChoice, L.L.C. v. Paxton*,
    49 F.4th 439 (5th Cir. 2022), *cert. granted* No. 22-555 (Sept. 29, 2023) ................23

*NetChoice, LLC v. Att'y Gen., Fla.*,
    34 F.4th 1196 (11th Cir. 2022), *cert. granted sub nom. Moody v. NetChoice,
    LLC*, No. 22-277 (Sept. 29, 2023) .............................................................3, 23

*Newman v. Google LLC*,
    No. 20-cv-04011-LHK, 2021 WL 2633423 (N.D. Cal. June 25, 2021) ....................18

*Newman v. Google LLC*,
    No. 20-cv-04011-VC, 2022 WL 2556862 (N.D. Cal. July 8, 2022) ........................22

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022) ................................................. 3, passim

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) ........................................................... 2, passim

*Parks Sch. of Bus., Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ...................................................................9

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .........................................................5

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) .................................................................8, 9

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd sub nom.* 697 F. App'x 526 (9th
    Cir. 2017) ...................................................................................18, 21

*Villegas v. Gilroy Garlic Festival Ass'n*,
    541 F.3d 950 (9th Cir. 2008) ................................................................................10

*Volokh v. James*,
    No. 22-CV-10195 (ALC), 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ...............................23

*W. Marine Prods., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
    572 F. Supp. 3d 841 (N.D. Cal. 2021) ...................................................................7

**STATE CASES**

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*,
    26 Cal. 4th 1013 (2001)....................................................................................22

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021)...............................................................................20

*Prager Univ. v. Google LLC*,
    85 Cal. App. 5th 1022 (2022)........................................................................2, 19, 20

*Prager Univ. v. Google LLC*,
    No. 19-cv-340667, 2019 WL 8640569 (Cal. Super. Nov. 19, 2019) .........................2, 22

*Robins v. Pruneyard Shopping Ctr.*,
    23 Cal. 3d 899 (1979)......................................................................................22

**FEDERAL STATUTES**

42 U.S.C. § 1983 ................................................................................................6, 7

47 U.S.C. § 230 ..................................................................................... 2, passim

**FEDERAL RULES**

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................7, 8

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, on January 16, 2024, at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 9 of the U.S. District Court for the Northern District of California, this Motion to Dismiss the First Amended Complaint ("FAC") will be heard. Defendants Google LLC ("Google") and YouTube, LLC ("YouTube") move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF REQUESTED RELIEF

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants request that the Court dismiss all of Plaintiff Robert F. Kennedy, Jr.'s claims with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In his FAC, Plaintiff Robert F. Kennedy, Jr. ("Kennedy") once again attempts to hold Google—a private entity—liable *as a state actor* for exercising its discretion to remove videos conveying COVID-19 and vaccine misinformation from its video-sharing platform, YouTube. After failing to convince this Court of his likelihood of success on the claims in the initial complaint, the FAC now proceeds under two theories: the state action doctrine of the First Amendment of the U.S. Constitution, which this Court previously all but rejected, and the free speech clause of the California Constitution, a newly added theory.  Neither passes muster.

Regarding the First Amendment claim, this Court already recognized that "[Kennedy's] First Amendment claim is unlikely to succeed on the merits."  Order on Application for Temporary Restraining Order, Dkt. No. 32, at 3 ("TRO Order").  The FAC's allegations, which are based on the same documents submitted with the TRO, fare no better.  Like the initial complaint, the FAC advances a thinly-pled theory that the federal government inserted itself into Google's content moderation decisions, thereby allegedly transforming Google's removal of certain videos featuring Kennedy into "state action."  But as the Court held in denying Kennedy's application for a TRO, Kennedy did not "mak[e] a colorable claim that [his] First Amendment rights have been infringed[] by way of a state actor."  TRO Order at 8.  Kennedy conceded at the TRO stage that the evidence provided in support of his application—the same evidence attached to

1    the FAC—does not show the government coerced Google at all.  TRO Order at 6.  And Kennedy

2    still fails to allege a single communication between the government and Google pertaining to him,

3    let alone communications reflecting government involvement in Google's decision to remove the

4    videos at issue here.

5            Indeed, an unbroken string of federal decisions from the Ninth Circuit and courts in this

6    District have dismissed complaints similar to Kennedy's for failure to state a plausible claim

7    premised on the state action doctrine.  *See O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir.

8    2023) (Twitter is not a state actor); *Informed Consent Action Network v. YouTube LLC*, 582 F.

9    Supp. 3d 712, 722 (N.D. Cal. 2022) ("*ICAN*") (Google is not a state actor); *Daniels v. Alphabet,

10   Inc.*, No. 20-CV-04687-VKD, 2021 WL 1222166, at *13 (N.D. Cal. Mar. 31, 2021) (same); *Hart

11   v. Facebook Inc.*, No. 22-CV-00737-CRB, 2022 WL 1427507, at *8 (N.D. Cal. May 5, 2022)

12   ("*Hart I*") (Facebook is not a state actor); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F.

13   Supp. 3d 1107, 1124–25 (N.D. Cal. 2020) ("*FAN*") (same); *Children's Health Def. v. Facebook,

14   Inc.*, 546 F. Supp. 3d 909, 930 (N.D. Cal. 2021) (same).  This Court should likewise hold that

15   Kennedy fails to state a plausible claim that his First Amendment rights have been infringed by a

16   state actor on this motion to dismiss.

17           If the Court reaches Kennedy's free speech claim under the California Constitution—and it

18   need not if it dismisses the federal First Amendment claim—then Kennedy faces two

19   insurmountable hurdles.  First, this state law claim is squarely preempted by Section 230 of the

20   Communications Decency Act because it seeks to hold Google liable for decisions protected by

21   the statute: whether to remove or decline to publish certain content.  *See Prager Univ. v. Google

22   LLC*, 85 Cal. App. 5th 1022 (2022); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

23   Second, the claim fails on the merits because courts repeatedly have rejected such a dramatic

24   expansion of California's constitutional free speech clause, holding that private companies

25   (including Google) do not become public fora subject to the free speech clause by hosting an

26   Internet forum.  *See Divino Grp. LLC v. Google LLC*, No. 19-cv-04749-VKD, 2022 WL 4625076,

27   *7 (N.D. Cal. Sept. 30, 2022); *Prager Univ. v. Google LLC*, No. 19-cv-340667, 2019 WL

28   8640569 at *5 (Cal. Super. Nov. 19, 2019).

And both of Kennedy's claims are independently barred because the relief he seeks would violate *Google*'s First Amendment rights by "telling [it] what content-moderation policies to adopt and how to enforce those policies." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–88 (N.D. Cal. 2022); *see Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1210 (11th Cir. 2022), *cert. granted sub nom. Moody v. NetChoice, LLC*, No. 22-277 (Sept. 29, 2023).  The FAC should be dismissed with prejudice.[1]

## II.      BACKGROUND

### A.      Factual Background

Google's subsidiary, YouTube, is a popular video-sharing platform.  FAC ¶¶ 9, 11, 36.

YouTube has policies that govern how people can use the service, including restrictions on the types of content that they can post.  *Id.* Ex. C.  These policies are designed and regularly updated to make YouTube a safer place for users and creators.  *Id.* Ex. A.

Under YouTube's current medical misinformation policy, Google may remove "content [from YouTube] that promotes information that contradicts health authority guidance on the prevention or transmission of specific health conditions, or on the safety, efficacy or ingredients of currently approved and administered vaccines."  *Id.* Ex. C.  Google retains discretion and ultimate decision-making authority over when to remove material.  *Id.*  Prior medical misinformation policies were materially similar.  *Id.* Exs. A, B.

Kennedy identifies a number of videos that Google removed from YouTube for violating its medical misinformation policy, including a video of Kennedy speaking at Saint Anselm College's New Hampshire Institute of Politics ("NHIOP") in March 2023, *id.* ¶ 20; and undated

---

[1] If the Court dismisses the complaint, it need not consider any preliminary injunction motion. This is because a "preliminary injunction motion can be premised only on claims that are capable of surviving a motion to dismiss." *Lindberg v. Wells Fargo Bank, N.A.*, No. C 14-2544 PJH, 2015 WL 1137634, at *3 (N.D. Cal. Mar. 13, 2015).  Once a court determines that a plaintiff's claims should be dismissed, it should deny as moot any pending motion for a preliminary injunction.  *See id.* at *6 (denying as moot pending motion for preliminary injunction where motion to dismiss was granted, as "plaintiff ha[d] no remaining viable claims"); *Lewis v. U.S. Bank Nat'l Ass'n*, No. 16-CV-05490-JSW, 2017 WL 2903192, at *10 (N.D. Cal. Apr. 5, 2017), *aff'd sub nom. Lewis v. U.S. Bank Nat'l Ass'n as Tr. to Wachovia Bank, Nat'l Ass'n*, 740 F. App'x 155 (9th Cir. 2018) (same).

videos of his interviews with Jordan Peterson, Joe Rogan, and a former New York Post reporter, *id.* ¶ 24.  The FAC does not allege when these videos were posted or removed.

The FAC asserts in a conclusory manner that these removal decisions were made "as part of [a] partnership between Google/YouTube and federal government officials," *id.* ¶ 27, and that the "White House and other government officials repeatedly worked with . . . YouTube[] to censor Mr. Kennedy during 2021 and 2022," *id.* ¶ 28.  Notably, Kennedy has not alleged a single communication or identified a single document between the federal government and Google from any point in time concerning videos of him, let alone the application of Google's misinformation policies to the removal of such content.  *Cf. id.* Ex. D (January 2021 email from White House official to *Twitter* regarding Kennedy's tweet).  Instead, in support of his sweeping allegations of a broader effort between Defendants and the federal government to censor him, Kennedy offers only allegations of several categories of benign conduct:

*First*, Kennedy alleges that there is a "close nexus" between YouTube and the federal government because the misinformation policies rely on information provided by government officials.  *Id.* ¶ 51.  Specifically, the complaint notes, content violates the policy if it "contradicts local health authorities' (LHA) or the World Health Organization's (WHO) medical information about COVID-19."  *Id.*

*Second*, Kennedy points to an alleged "joint enterprise" between Google and the government to create and enforce medical misinformation policies.  *Id.* ¶ 52.  Kennedy attached to the FAC several documents showing that, in 2021—years before Google took the complained-of removal actions at issue here—employees of Google met with representatives of the Executive Office of the President, the Centers for Disease Control and Prevention, and the Office of the Surgeon General to discuss the proliferation of misinformation concerning COVID-19.  *Id.* ¶¶ 27–30, Exs. E–H.  As shown in the exhibits attached to the FAC, these meetings primarily involved the exchange of information regarding Google's ongoing efforts to combat medical misinformation on YouTube.

For example, in April 2021, White House official Rob Flaherty stated in an email to Google that his focus in meeting with Google was on obtaining additional information regarding

its ongoing efforts to combat misinformation.  *Id.* Ex. E.  He asked for the "top trends that [Google was] seeing in terms of misinformation" and had additional questions regarding the reduction "metric[s]" Google had selected and the effectiveness of various "interventions" Google had implemented.  *Id.*  Flaherty made clear that the government was not recommending—let alone requesting or requiring—that Google remove any content: "We certainly recognize that removing content that is unfavorable to the cause of increasing vaccine adoption is not a realistic—or even good—solution."  *Id.*  Other meetings similarly involved the exchange of information regarding COVID-19.  *See id.* Ex. F.

*Third*, Kennedy broadly alleges that in July 2021, President Biden and the White House began to issue threats to platforms, including the elimination of immunity under Section 230 of the Communications Decency Act, as part of an alleged "plan to punish tech companies like Google if they did not go along with the Biden Administration's censorship goals."  *Id.* ¶¶ 34, 57.  The exhibits attached to the FAC show, however, that Google and the government merely continued their ongoing exchange of information.  *See id.* Exs. G (meeting with Google and OSG for "YouTube/Google . . . to share more of the *work it was doing* around health mis- and disinformation." (emphasis added)), H (OSG representative acknowledging that Google has been "working hard and thinking deeply about [the COVID-19] issue").  Indeed, when Google updated its COVID-19 vaccine misinformation policy in September 2021, it proactively shared this information with the government.[2]  *Id.* Ex. J.  The email linked to Google's "help center," where the government could learn more about Google's newly updated policy.  *Id.*

---

[2] Google's COVID-19 misinformation policy has, since the beginning, addressed vaccine misinformation.  *See* COVID-19 Medical Misinformation Policy (May 2020), *available at* https://web.archive.org/web/20200521042253/https://support.google.com/youtube/answer/9891785.  Its policy expanded to address multiple types of COVID-19 vaccine-related misinformation in late 2020.  *See* COVID-19 Medical Misinformation Policy (Dec. 2020), *available at* https://web.archive.org/web/20201211052515/https://support.google.com/youtube/answer/9891785.  The Court may take judicial notice of these publicly accessible webpages.  *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) ("Proper subjects of judicial notice when ruling on a motion to dismiss include . . . publicly accessible websites."); *Metricolor LLC v. L'Oréal S.A.*, No. 2:18-cv-00364-CAS (Ex), 2020 WL 3802942, at *7 (C.D. Cal. July 7, 2020) ("district courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to this rule").

1    *Fourth*, Kennedy alleges that YouTube operates a public forum and therefore is engaged in

2    a traditionally public function.  *Id.* ¶ 58.

3    **B.    Procedural History**

4    Three-and-a-half months after declaring his candidacy for President in April 2023, and five

5    months after the removal of his NHIOP speech, Kennedy filed an initial complaint alleging that

6    Google had violated his First Amendment rights and seeking an injunction under 42 U.S.C. § 1983

7    to "restore any videos of Mr. Kennedy's political speech that it has removed during the 2024

8    presidential campaign," as well as a declaration that Google's medical misinformation policies are

9    unconstitutional.  Dkt. No. 1, at 13.  One week after that, Kennedy filed an application for a

10   temporary restraining order seeking to bar Google from using its medical misinformation policies

11   "to remove videos of Mr. Kennedy's speech . . . from YouTube . . . pending a trial on the merits."

12   Dkt. No. 7-4, at 2.

13   Following briefing and a hearing, this Court issued a thorough order denying the TRO

14   application and Kennedy's request for expedited discovery.  TRO Order at 11.  The Court,

15   applying the Ninth Circuit's "controlling authority" in *O'Handley*, 62 F.4th 1145, held that

16   Kennedy failed to "mak[e] a colorable claim that [his] First Amendment rights have been

17   infringed[] by way of a state actor."  TRO Order at 8.  In so holding, the Court acknowledged the

18   evidence before it, including emails between government officials and Google personnel, from the

19   *Missouri v. Biden* case, No. 3:22-CV-01213, 2023 WL 5841935 (W.D. La. July 4, 2023), *aff'd in*

20   *part, rev'd in part*, No. 23-30445 (5th Cir. Oct. 3, 2023).  *Id.* at 7.  The Court agreed that these

21   communications "concern requests for information to YouTube about trends related to vaccine

22   misinformation and YouTube seeking information . . . ."  *Id.*  Noting that Kennedy had conceded

23   the evidence provided in support of his application "does not show that the government coerced

24   Google," this Court concluded that "[t]here is no evidence . . . that any of the identified

25   government officials . . . demanded that Google adopt a COVID-19 medical misinformation or

26   vaccine misinformation policy" and that "there is no evidence . . . that government officials

27   communicated with Google regarding Kennedy at all."  *Id.* at 6–7; *see also* TRO Hr'g Tr. 50:18-

28

51:2.  In ruling on the TRO application, this Court considered the same communications Kennedy has attached to the FAC.[3]  TRO Order at 7.

Following this Court's TRO Order, Google filed a motion to dismiss the initial complaint. Dkt. No. 37.  Rather than oppose the motion, Kennedy filed an amended complaint.  Dkt. No. 42. The amended complaint drops Kennedy's Section 1983 claim and instead asserts (1) a claim for "Declaratory/Injunctive Relief under First Amendment/State Action Doctrine"; and (2) a claim for "Declaratory Relief under Article I, sec. 2 of the Cal. Constitution/*Pruneyard*."  *Id.*

## III.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *W. Marine Prods., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 572 F. Supp. 3d 841, 847 (N.D. Cal. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In evaluating the complaint, "the court must accept as true all 'well pleaded factual allegations' and determine whether the allegations 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Though courts "must also construe the alleged facts in the light most favorable to the plaintiff," they are "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Nor does the Court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

---

[3] When it ruled on the TRO, the Court had before it all of the exhibits attached to the FAC except for two: Exhibit I, a July 2021 CNN article regarding White House review of Section 230, and Exhibit K, an April 16, 2021 calendar invitation from the White House to Twitter regarding "Twitter Vaccine Misinfo Briefing."  This Court also had eight additional documents before it that Kennedy has elected not to attach to the FAC.

1    IV.     **ARGUMENT**

2         **A.     Kennedy's First Amendment Claim Once Again Fails to State a Plausible
                Claim of "State Action"**

3

4         In denying Kennedy's TRO application, this Court correctly concluded based upon its

5    careful review of the evidence and application of controlling Ninth Circuit precedent that Kennedy

6    failed to show that Google was engaged in state action when it removed videos of Kennedy from

7    YouTube.  TRO Order at 6–8.  Judged under the Rule 12(b)(6) standard, Kennedy's First

8    Amendment claim fares no better.  Kennedy's allegations in support of his First Amendment claim

9    in the FAC rely upon the very same documents this Court already considered in denying the TRO

10   application.  Moreover, Kennedy's allegations that Google's removal decisions were the product

11   of governmental threats are conclusory, and similar allegations have been rejected by judges in

12   this District several times over.  And the Fifth Circuit's decision in *Missouri v. Biden* does not

13   alter the conclusion that Kennedy fails plausibly to allege state action; that decision must yield to

14   the binding authority in this Circuit and is distinguishable in any event.

15               **1.     Kennedy Fails to Plausibly Allege that Google, a Private Company,
                         Engaged in Any "State Action"**

16        As this Court already has concluded, binding Ninth Circuit authority in *O'Handley*

17   forecloses Kennedy's claim that Google engaged in state action.  As a private company, Google is

18   not subject to the First Amendment's restraints.  *Prager Univ. v. Google LLC*, 951 F.3d 991, 996

19   (9th Cir. 2020).  This is not an "exceptional case[]" in which a private party may be deemed a

20   "state actor."  *O'Handley*, 62 F.4th at 1157.  Kennedy himself has acknowledged that further

21   pursuit of his claim is "futile," given this Court's prior ruling that "*O'Handley* is controlling here

22   and that it precludes relief in a case like this."  Appellant's Emergency Motion for Injunction

23   Pending Appeal, at 29–30,  *Kennedy v. Google LLC, et al.*, No. 23-16141 (9th Cir. Sept. 11,

24   2023).

25        In determining whether conduct allegedly causing deprivation of a constitutional right may

26   be attributable to the state, the Court considers a two-step framework.  *Lugar v. Edmondson Oil*

27   *Co.*, 457 U.S. 922, 937 (1982).  The Court first asks whether the alleged constitutional violation

28   was caused by the "exercise of some right or privilege created by the State or by a rule of conduct

imposed by the State or by a person for whom the state is responsible." *Id.* If the answer is yes, the Court then considers whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor" under four tests: (1) the public function test, (2) the state compulsion test, (3) the nexus test, and (4) the joint action test. *Id.* at 939.

Kennedy's allegations do not satisfy the first prong of the test, as this Court already held. TRO Order at 4 n.1. Google did not exercise a "state-created right" when it removed posts of Kennedy; the FAC itself alleges that YouTube's medical misinformation policies used to remove videos of Kennedy were developed by Google. FAC ¶¶ 20, 42; *see O'Handley*, 62 F.4th at 1156. Nor did Google enforce a state-imposed rule. As the FAC alleges, Google acted under the terms of its own rules when it removed Kennedy's speeches for "violating [its] policies on COVID-19 vaccine misinformation . . . ." FAC ¶ 21; *see O'Handley*, 62 F.4th at 1156–57.

On the second prong, the FAC fails to plausibly allege that Google is a state actor under any of the four tests. Kennedy does not make any allegations directed at the state compulsion test. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995) ("[T]he state compulsion test considers whether some state regulation or policy compelled the offensive action."). Therefore, the discussion below focuses on the public function, nexus, and joint action tests.

        (a)    *YouTube Does Not Serve a Public Function or Constitute a Public Forum*

Binding Ninth Circuit authority forecloses any argument that YouTube is a public forum for speech subject to First Amendment constraints. In *Prager University v. Google LLC*, the Ninth Circuit expressly held that YouTube is not a "public forum for speech" and is not bound by the First Amendment's constraints when it decides what content to permit or not permit on its platform. 951 F.3d at 996–97. *Prager* acknowledged and distinguished *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002), the case discussed at paragraphs 38 and 58 of the FAC, by explaining that "[t]he relevant function performed by YouTube—hosting speech on a private platform—is hardly 'an activity that only governmental entities have traditionally performed.'" *Prager Univ.*, 951 F.3d at 997–98 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930, 1934 (2019)). Thus, while "YouTube may be a paradigmatic public square on the Internet," "it is

1   'not transformed' into a state actor solely by 'provid[ing] a forum for speech.'" *Id.* (quoting

2   *Halleck*, 139 S. Ct. at 1930).

3                    (b)      *Kennedy's Allegations Fail to Satisfy the Nexus Test*

4           Kennedy's allegations fall well short of showing that the government "exercised coercive

5   power or has provided such significant encouragement" to Google so as to give rise to state action

6   under the nexus test.[4]  *O'Handley*, 62 F.4th at 1157 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004

7   (1982)).  Such encouragement is not mere plaudits for doing the right thing, but instead applies

8   only where "the State's use of positive incentives . . . overwhelm[s] the private party and

9   essentially compel[s] the party to act in a certain way." *Id.* at 1158.  Significantly, Kennedy

10  conceded at the TRO hearing that there was no evidence of coercion here, and the Court accepted

11  that position, in part, for purposes of its ruling.  TRO Order at 6.  Kennedy should not be permitted

12  to take an inconsistent position on this motion. *See Hamilton v. State Farm Fire & Cas. Co.*, 270

13  F.3d 778, 782–83 (9th Cir. 2001) (judicial estoppel applies to "cases where the court relied on, or

14  'accepted,' the party's previous inconsistent position").  However, even if the Court considers the

15  coercion component of the test, Kennedy fails plausibly to allege it.

16          As an initial matter, Kennedy's state action allegations fail under *O'Handley* and in light of

17  the persuasive rulings from multiple judges in this District rejecting substantially identical claims.

18  In *O'Handley*, the plaintiff alleged that California formed a government entity—the Office of

19  Elections Cybersecurity (OEC)—with an express mission "[t]o monitor and counteract false or

20  misleading information regarding the electoral process . . . ." 62 F.4th at 1154.  In partnership with

21  the OEC, Twitter created a special "Partner Support Portal" through which election officials could

22  flag posts for "expedited review." *Id.* at 1153–54.  Using the expedited review procedures it helped

23  develop, the OEC saw swift and effective results: *98 percent* of the posts it flagged were promptly

24  removed by Twitter. *Id.*  In addition, O'Handley alleged he was specifically targeted by the OEC in

25  the form of a message to Twitter flagging one of his tweets. *Id.* at 1154.  When Twitter received

26

27  ─────────────────────
    [4] This case does not concern the version of the nexus test that considers whether the private entity

28  relies on public funding or is comprised of mostly government institutions.  TRO Order at 4;
    *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008).

─────────────────────
                                        -10-

the message, it placed a warning label on the tweet, limited user access to it, and assessed a "strike" against O'Handley's account. *Id.* Then, following the January 6, 2021 attack on the Capitol, Twitter allegedly ramped up its enforcement against O'Handley, issuing four additional strikes against his account before suspending it entirely in February 2021. *Id.* at 1155.

The Ninth Circuit held the alleged government conduct was not coercive for purposes of the nexus test because Twitter was "free to ignore" the OEC official's request to remove O'Handley's tweet. *Id.* at 1157. Thus, the court reasoned, the government request at issue is "far from the type of coercion at issue in *Carlin*," a case in which a deputy county attorney threatened to prosecute a telephone company if it continued to carry a third-party message service. *Id.* at 1157–58 (citing *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987)). The court acknowledged OEC's message regarding O'Handley's post and the statistic showing that Twitter complied with the vast majority of OEC's removal requests, but found that neither plausibly suggested that OEC pressured Twitter because, ultimately, "Twitter was free to agree with the OEC's suggestions—or not." *Id.* at 1158–59. Similarly, even when "construing the facts alleged in the light most favorable" to O'Handley, the court concluded that the allegations failed to show "significant encouragement" because "OEC offered Twitter no incentive for taking down the post it flagged" and "Twitter complied with the request under the terms of its own content-moderation policy and using its own independent judgment." *Id.* at 1158.

Judges in this District have likewise dismissed cases on all fours with this one: state action claims against Google and YouTube based on the removal of content under their medical and vaccine misinformation policies. In *ICAN*, Judge Tigar dismissed allegations that YouTube behaved as a state actor when it removed plaintiff's videos containing COVID- and vaccine-related misinformation and ultimately terminated its account. 582 F. Supp. 3d at 720. Judge Demarchi rejected similar allegations in *Daniels*, concluding that "Mr. Daniels does not plead any facts that support his argument that the federal government 'coerced' or 'significantly encouraged' defendants to remove his . . . videos from YouTube's platform." 2021 WL 1222166, at *6.

Courts in this District have reached the same conclusion with respect to Facebook's application of its COVID-19 and vaccine misinformation policies. In *Hart v. Facebook*, Judge

Breyer dismissed similar First Amendment claims against Facebook and Twitter, holding that Biden Administration officials' policy suggestions regarding those companies' COVID and vaccine-related misinformation policies and a related Surgeon General advisory were insufficient to make those companies state actors when they suspended the plaintiff's accounts.  *Hart I*, 2022 WL 1427507, at *7; *Hart v. Facebook*, No. 22-cv-737-CRB, 2023 WL 3362592, at *3 (N.D. Cal. May 9, 2023) ("*Hart II*").  Judge Breyer considered—and rejected—many of the same general allegations made by Kennedy's complaint.  *Hart I*, 2022 WL 1427507, at *2–3, *7; *Hart II*, 2023 WL 3362592, at *2; *see also Children's Health Def. v. Facebook*, 546 F. Supp. 3d 909, 930 (N.D. Cal. 2021) (similar).

Here, even when construed in the light most favorable to Kennedy, the FAC allegations and exhibits show nothing more than the kind of "consultation and information sharing," that was deemed insufficient in *O'Handley* and multiple other decisions from this District involving similar allegations.  TRO Order at 7; *see O'Handley*, 62 F.4th at 1158–60; *see also Hart II*, 2023 WL 3362592, at *3 ("That government officials asked Facebook and Twitter to generally be on the lookout for COVID-related misinformation and contacted the platforms about the prevalence of misinformation do not show that the government exercised dominant control over the social media companies' action.").  Coercion or significant encouragement cannot be plausibly inferred from the communications Kennedy attaches to the FAC, which reveal the government's express acknowledgements that Google was independently "working hard and thinking deeply" about the issue of misinformation on YouTube, FAC Ex. H, apprising the government of new policies *Google* was working on, *id.* Ex. G, and agreeing voluntarily to "share more of the work it was doing" with the government, *id.*; *see also id.* Exs. E, H, J.  When Google made updates to YouTube's policies regarding vaccine-related misinformation in September 2021,[5] a Google employee emailed the government to inform *it* of those updates "we"—as in Google—"recently made."  *Id.* Ex. J.  It is hardly plausible to infer from this and the other FAC exhibits that Google's misinformation policies were merely the product of the government's top-down "demand[] that

---

[5] *See, supra*, Note 2 (discussion of Google's pre-2021 vaccine-related misinformation policies).

1    Google adopt a COVID-19 medical misinformation or vaccine misinformation policy."  TRO

2    Order at 7.

3        Indeed, the FAC's conclusory allegations of government coercion are contradicted by the

4    very documents Kennedy attached to the complaint.  For instance, Kennedy cites a June 2022

5    email to allege that, "in June 2022, Google executives were contacting CDC (and likely other

6    executive branch) officials, asking [the CDC] to tell them whether certain viewpoints should be

7    censored on YouTube."  FAC ¶ 54.  The attached email, however, shows a Google employee

8    asking a CDC official for "evidence-based input" on whether certain medical claims were true or

9    false (and being told by the CDC that it would "probably end up needing to refer you to another

10   agency").  *Id.* Ex. L.  The email does not reflect any request that the CDC *decide for Google* what

11   to do about the content, let alone whether to censor it.  *See id.*; *see* TRO Order at 7 (finding that

12   communications show "YouTube seeking information related to science backed responses to two

13   medical misinformation claims").  Such allegations should not be credited.  *See Gonzalez*, 759

14   F.3d at 1115.

15       The vague allegations that the White House threatened to "push to eliminate the

16   [platforms'] section 230 immunity" if they did not "censor dissenting public health viewpoints,"

17   FAC ¶¶ 31, 34, do not plausibly support coercion or other state action theory either.  Judges in this

18   District have rejected nearly identical allegations on several other occasions.  In *Hart*, the plaintiff

19   pointed to the same series of remarks from the White House that Kennedy relies on here, alleging

20   that President Biden had "threatened social media companies who do not comply with his

21   directives by publicly shaming and humiliating them, stating 'They're killing people,'" which "in

22   light of 'public battles over the future of Section 230' . . . amount[ed] to a 'threat.'"  *Hart I*, 2022

23   WL 1427507, at *8.  Judge Breyer rejected these "conclusory allegations," holding that they do

24   not "come remotely close to coercion," as "[a] President's one-time statement about an industry

25   does not convert into state action all later decisions by actors in that industry that are vaguely in

26   line with the President's preferences."  *Id.*  Similarly, in *ICAN*, the plaintiff alleged that YouTube

27   implemented misinformation policies in direct response to government threats, including in the

28   form of statements by then-presidential candidate Biden and various members of Congress that

-13-

they would eliminate Section 230 immunity or increase governmental regulation if companies did not step up their efforts to combat misinformation. 582 F. Supp. 3d at 716–17. The court rejected these allegations as a "post hoc fallacy" that failed to establish a causal relationship between any government coercion and Defendants' conduct. *Id.* at 723–24. It found the statements by members of Congress and others "too general and amorphous to constitute coercive action with respect to the specific challenged actions in this case." *Id.* Other courts have held the same. *See, e.g.*, *Children's Health Def.*, 546 F. Supp. 3d at 944 ("[A]llegations about … the possibility of legislation to remove Section 230 immunity are too general to support a claim of governmental coercion, as there are no allegations that any public official pressured Facebook to take any specific actions regarding CHD's page."); *Doe v. Google LLC*, No. 20-cv-07502-BLF, 2021 WL 4864418, at *3 (N.D. Cal. Oct. 19, 2021) (same). This Court should so hold as well.

Kennedy will undoubtedly point to the Fifth Circuit's decision in *Missouri v. Biden*,[6] No. 23-30445 (5th Cir. Oct. 3, 2023), to suggest that his allegations suffice. But *O'Handley*—not *Missouri v. Biden*—controls in this Circuit. The Fifth Circuit applied a substantively different standard for coercion than the Ninth Circuit did in *O'Handley*. *Compare O'Handley*, 62 F.4th at 1156–57 (nexus test requires a threat of "adverse action," such as a "threat[] to prosecute" or "equivalent threats"); *with Missouri*, slip op. at 41 ("tone" and reasonable perception of a "threat worth heeding" are sufficient for coercion). And under *O'Handley*, as this Court has explained, allegations like the ones Kennedy has made here fail to show anything more than communications between "private and state actors," who were "generally aligned in their missions to limit the spread of misleading . . . information." *O'Handley*, 62 F.4th at 1157. "Such alignment does not transform private conduct into state action." *Id.* The U.S. Solicitor General recently characterized

---

[6] The Fifth Circuit initially issued an opinion on September 8, 2023, *see Missouri v. Biden*, No. 23-30445, 2023 WL 5821788 (5th Cir. Sept. 8, 2023), but withdrew that opinion on petition for rehearing on October 3, 2023. *See Missouri v. Biden*, No. 23-30445, slip op. at 1 (5th Cir. Oct. 3, 2023) (granting panel rehearing and withdrawing prior opinion). The opinion on rehearing is substantively identical to the prior opinion, except that it includes additional government officials in the modified injunction. *See id.* at 59–60.

1  the standards adopted by the Ninth and Fifth Circuits as "irreconcilable" in an application to the

2  Supreme Court to stay the injunction issued in *Missouri*.[7]

3    Indeed, in *Hart*, Judge Breyer considered some of the same documents at issue here from

4  *Missouri v. Biden* and, applying *O'Handley*, dismissed similar First Amendment claims against

5  Facebook and Twitter.  *Hart II*, 2023 WL 3362592, at *2–4.  As Judge Breyer held, the

6  "deposition of CDC's Director of Digital Media Carol Crawford and emails involving Deputy

7  Assistant to the President Robert Flaherty, then-White House Senior Advisor Andy Slavitt and

8  Facebook," "obtained as part of the discovery in *Missouri v. Biden*," do "not establish joint action

9  or government coercion" under *O'Handley*.  *Id*. at *2–3.  That "government officials asked

10  Facebook and Twitter to generally be on the lookout for COVID-related misinformation and

11  contacted the platforms about the prevalence of misinformation do not show that the government

12  exercised dominant control over the social media companies' action in temporarily restricting

13  Hart's accounts."  *Id.* at *3.  The same is true here under *O'Handley*.

14    In any event, *Missouri* is distinguishable.  *Missouri v. Biden* dealt with government

15  defendants—not private actors—and did not conduct any platform-specific inquiry to find state

16  action by any particular platform as to any particular content moderation decision.  The Sixth

17  Circuit recently cited similar grounds for distinguishing *Missouri v. Biden* and rejecting

18  allegations that Twitter's application of its COVID-19 content policy to the plaintiffs was state

19  action.  *See Changizi v. Dep't of Health & Hum. Servs.*, No. 22-3573, 2023 WL 5965931, at *4

20  n.8 (6th Cir. Sept. 14, 2023).  As the Sixth Circuit noted, in *Missouri v. Biden*, the state action

21  question was "not based on actions with respect to discrete individual plaintiffs, as in the case we

22  have before us," *id.*, and notwithstanding the evidence from *Missouri v. Biden*, "Plaintiffs fail to

23  adduce facts demonstrating that the decisions Twitter made when it enforced its own COVID-19

---

[7] *See* Application for a Stay of the Injunction Issued by the United States District Court for the Western District of Louisiana at 16, *Murthy v. Missouri,* No. 23A243 (S. Ct. Sept. 14, 2023). Justice Alito granted the application and entered a temporary administrative stay of the preliminary injunction on September 14, 2023.  *See* Order, *Murthy v. Missouri*, No. 23A243 (S. Ct. Sept. 14, 2023).

1   policy did not result from its 'broad and legitimate discretion as an independent company,'" *id*. at

2   *3.  So it is here.

3                    (c)      *Kennedy's Allegations Fail to Satisfy the Joint Action Test*

4          Kennedy's allegations also fall short of satisfying the "demanding" standard for joint

5   action: that the government conspired or "insinuated itself into a position of interdependence" with

6   Google, or "significantly involve[d] itself in [Google's] actions and decisionmaking in a 'complex

7   and deeply intertwined process,'" such that Google should be deemed a state actor.  *O'Handley*,

8   62 F.4th at 1159.

9          As this Court explained in its TRO Order, *O'Handley* forecloses Kennedy's claim because

10  it concluded that allegations of more "entwinement" there than "in the present case" failed to give

11  rise to a plausible inference of joint action.  TRO Order at 8.  In *O'Handley*, the Court ruled that

12  the allegations—including, among others, that government requests resulted in content removal 98

13  percent of the time (as well as a flag on the plaintiff's content)—amounted to "consultation and

14  information sharing" that does not "rise to the level of joint action."  62 F.4th at 1160.  Twitter

15  retained control over its content moderation decisions, and the government had neither "interjected

16  itself into the company's internal decisions" nor "played any role in drafting Twitter's" policy, *id.*,

17  so as to transform Twitter into a state actor.  So too here.  For the same reasons Kennedy's

18  allegations fail to show anything more than "consultation and information sharing," *supra* Part

19  IV.A.1.b, they likewise fail to show that the federal government so "insinuated itself into a

20  position of interdependence" with Google so as to satisfy the joint action test.  Vague and

21  conclusory allegations about "coordination and collaboration" between Google and the federal

22  government, *e.g.*, FAC ¶¶ 20, 36, are little more than "naked assertion[s]" of the legal standard

23  that do not suffice to plausibly allege joint action, *Iqbal*, 556 U.S. at 678, and do not "rise to the

24  level of joint action" in any event.  *O'Handley*, 62 F.4th at 1160 (quoting *Mathis v. Pac. Gas &

25  Elec. Co.*, 75 F.3d 498, 504 (9th Cir. 1996)); *see also FAN*, 432 F. Supp. 3d at 1124–25 (finding

26  no state action despite allegations of a "'partnership' with the government and law enforcement

27  agencies" that assisted Facebook in detecting and removing posts from Russian operations

28  designed to interfere with the 2018 election).

Google's decision to rely on medical information from the World Health Organization and local health authorities (which notably are *not* the federal government) in helping Google decide what content to remove also does not transform YouTube's policies into a government-imposed censorship regime.  It merely demonstrates that Google sought to base its content moderation decisions on medical information from those outside experts, while retaining complete control over its content moderation decisions.  *See O'Handley*, 62 F.4th at 1160; *see Children's Health Def.*, 546 F. Supp. 3d at 930 (allegations that Facebook "relied on CDC information about vaccines to determine what information is 'misinformation'" insufficient to plead state action).  If anything, "[b]y adopting a public health framework to guide decisions about content moderation, Defendants by definition maintained 'independent professional judgment' to make decisions about the content on their platforms." *ICAN*, 582 F. Supp. 3d at 721–22.  In fact, a platform's "decision to look to the WHO further suggests that the federal government has *not* created a 'rule of decision.'" *Id.* at 721 n.4 (emphasis added); *accord Children's Health Def.*, 546 F. Supp. 3d at 927–28.

### 2. Kennedy Does Not Allege Any "State Action" Specifically with Respect to Him

Finally, even if the allegations show that Google engaged in state action with respect to the creation or implementation of its misinformation policies more generally (they do not), the complaint still lacks any allegation that Google engaged in any state action *with respect to videos of him.*  Such an omission is fatal.  The government must have compelled "the *specific conduct* of which the plaintiff complains" in order for that conduct to be treated as state action.  *Blum*, 457 U.S. at 1004 (emphasis added); *accord Hart I*, 2022 WL 1427507, at *7–8; *FAN*, 432 F. Supp. 3d at 1126.  All Kennedy can muster is a two-year-old email *to a different company* about a *different post*, FAC ¶ 27, and a vague reference by President Biden to misinformation spread by "these 12 people," *id.* ¶ 32, which Kennedy interprets to refer to the "disinformation dozen" group of which he claims to be a member, *id.* ¶ 33.  These allegations are simply too attenuated from Google and its removal of the videos of Kennedy at issue here in particular to sustain a claim of state action.

1  *Cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20

2  months later suggests, by itself, no causality at all.").

### B.  Kennedy's Free Speech Claim Under the California Constitution is Barred by Section 230 and Fails in Any Event

In his second claim for relief, Kennedy alleges that Google violates Article I, section 2 of

the California Constitution (often referred to as the "free speech" clause) because Google

"engages in blatant viewpoint discrimination without any showing that hosting Kennedy's speech

will disrupt YouTube's normal business operations" and its medical misinformation policy is not a

"reasonable time, place and manner restriction."  FAC ¶ 71.

As discussed above, Kennedy's federal claim should be dismissed, and the Court should

decline to exercise supplemental jurisdiction over Kennedy's state law claim for declaratory relief

under the California Constitution.  *E.g.*, *O'Handley*, 62 F.4th at 1164 ("Having properly dismissed

O'Handley's federal claims with prejudice, the district court did not abuse its discretion when it

declined to exercise supplemental jurisdiction over his remaining claim under the California

Constitution."); *Divino Grp. LLC v. Google*, No. 19-cv-04749-VKD, 2021 WL 51715, at *9 (N.D.

Cal. Jan. 6, 2021); *Newman v. Google LLC*,  No. 20-cv-04011-LHK, 2021 WL 2633423, at *13

(N.D. Cal. June 25, 2021); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096–

97 (N.D. Cal. 2015), *aff'd sub nom.* 697 F. App'x 526 (9th Cir. 2017).  This case has yet to

proceed beyond the pleadings, and there has been no discovery conducted to date.  Few judicial

resources are wasted by dismissing the case at this phase, and dismissal promotes comity by

allowing California courts to interpret state law in the first instance.  *Sikhs for Justice*, 144 F.

Supp. 3d at 1097.

However, if the Court considers the merits, it should dismiss the claim for two independent

reasons: (1) Section 230 of the Communications Decency Act ("CDA") bars this state law claim;

and (2) the claim fails on the merits, as no court has recognized a *Pruneyard* free speech claim in

the context of Internet fora.

-18-

1                 **1.**      **Section 230 Bars This State Law Claim**

2          Under Section 230, "[n]o provider or user of an interactive computer service shall be

3 treated as the publisher or speaker of any information provided by another information content

4 provider." 47 U.S.C. § 230(c)(1). The Ninth Circuit has explained that, "in passing Section 230 .

5 . . Congress sought to immunize the *removal* of user-generated content." *Fair Hous. Council of*

6 *San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc).

7          The scope of Section 230 immunity extends to state constitutional claims, including the

8 very claim Kennedy asserts in this case. Section 230 reflects an unambiguous intent to bar and

9 preempt "liability . . . imposed under any State or local law that is inconsistent with this section."

10 47 U.S.C. § 230(e)(3). The preemptive scope of 230 extends equally to state constitutions under

11 the Supremacy Clause, as courts have specifically held with respect to the Article I, Section 2

12 claim under the California Constitution asserted by Kennedy here. *See Prager Univ.*, 85 Cal. App.

13 5th at 1033; *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 605-06 (S.D.N.Y. 2020).

14          For example, in *Prager*, plaintiff Prager University sued Google under the free speech

15 clause of the California Constitution for restricting user access to and preventing plaintiff from

16 monetizing videos it posted to YouTube. 85 Cal. App. 5th at 1029–30. The California Court of

17 Appeal ruled that Section 230 barred this claim because "the conduct Prager alleges is injurious

18 consists of defendants' decisions regarding the audience to which videos would be published

19 . . . ." *Id.* at 1033; *see also Domen*, 433 F. Supp. 3d at 605–06 (holding plaintiff's free speech

20 claim under the California Constitution preempted by Section 230).

21          Just as the court concluded in *Prager* that all the requisites of Section 230 were satisfied

22 with respect to the free speech claim against Google in that case, so too should this Court find with

23 respect to Kennedy's free speech claim in this case. Section 230 immunity attaches when (1) the

24 defendant is "a provider or user of an interactive computer service," (2) "whom a plaintiff seeks to

25 treat, under a state law cause of action, as a publisher or speaker," (3) "of information provided by

26 another information content provider." *Barnes*, 570 F.3d at 1100–01; 47 U.S.C. § 230(c)(1).

27 Applying this standard, courts consistently have held that Google and YouTube are not liable for

28 claims relating to the removal of third-party content. *Kifle v. YouTube LLC*, No. 21-cv-01752-

CRB, 2021 WL 10331555, at *3–4 (N.D. Cal. Oct. 5, 2021); *Lancaster v. Alphabet, Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *2–3 (N.D. Cal. July 8, 2016); *Prager Univ.*, 85 Cal. App. 5th at 1033; *see also FAN*, 432 F. Supp. 3d at 1120.  The same is true here.

**Interactive Computer Service.**  As to the first prong, it is beyond dispute that Google and YouTube are providers of interactive computer services.  FAC ¶ 36 ("YouTube is . . . the second largest search engine on the Internet."); ¶ 9 (alleging that YouTube is a wholly owned subsidiary of Google); *see Prager Univ.*, 85 Cal. App. 5th at 1033.

**Treatment as Publisher or Speaker.**  The second requirement of Section 230 asks whether Kennedy's free speech claim seeks to treat Google as a publisher or speaker.  According to the complaint's allegations, the basis for this lawsuit is that "YouTube often removes videos of Mr. Kennedy's comments from its public platform."  FAC ¶ 4.  Kennedy alleges that Google coordinated with the federal government to develop misinformation policies that Google uses to "censor" certain of Kennedy's statements, including videos of various speeches and interviews Kennedy has given.  *Id.* ¶¶ 20-21 (alleging removal of March 2023 speech at Saint Anselm's NHIOP); *id.* ¶ 24 (alleging removal of interviews with Jordan Peterson, Joe Rogan, and a former New York Post reporter).  These allegations, which arise from Google's removal of certain videos of Kennedy, seek to hold Google liable for content moderation decisions protected by Section 230.

"[R]emoving content is something publishers do, and to impose liability on the basis of such content necessarily involves treating the liable party as a publisher of the content it failed to remove."  *Barnes*, 570 F.3d at 1102; *see also Roommates.com*, 521 F.3d at 1170–71.  Courts have consistently rejected similar claims seeking to hold Google and/or YouTube liable for removal of content.  *See Prager Univ.*, 85 Cal. App. 5th at 1033 (Google's restrictions on the audiences that can view plaintiff's content constitute "editorial publication decisions" protected by Section 230); *Lancaster*, 2016 WL 3648608, at *2–3 ("[T]he CDA precludes as a matter of law any claims arising from [YouTube's] removal of Plaintiff's videos."); *see also Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 26 (2021) (Section 230 barred claims because they "all concern Twitter's removal of or refusal to publish 'information provided by another information content provider'"

and noting that "[c]ourts have routinely rejected a wide variety of civil claims" that seek to hold platforms "liable for removing or blocking content").

The result is no different under Plaintiff's characterization of Google's conduct as "viewpoint discrimination."  FAC ¶ 71.  "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  *Roommates.com*, 521 F.3d at 1170–71; *Barnes*, 570 F.3d at 1102 ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content").  Accordingly, in *Sikhs for Justice "SFJ", Inc. v. Facebook*, the court concluded—and the Ninth Circuit affirmed—that a claim alleging that Facebook engaged in "blatant discriminatory conduct" by blocking plaintiff's content in India sought to hold Facebook liable for its conduct as a publisher.  144 F. Supp. 3d at 1094–95, *aff'd* 697 F. App'x 526 (9th Cir. 2017).  It noted that the "act that Defendant allegedly conducted in a discriminatory manner is the removal of the SFJ Page in India."  *Id.* at 1095; *see also Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 WL 6540452, at *8 (N.D. Cal. Nov. 2, 2016) (Section 230 barred claim against Google for removing content "regardless of defendants' alleged motive"); *Green v. YouTube, LLC*, No. 18-cv-203-PB 2019 WL 1428890, at *2, *6 (D.N.H. Mar. 13, 2019) (Section 230 barred claims against YouTube despite allegation that removal of content and account closure was "motivated by political bias").  Nor does it matter that Kennedy's removed speech is allegedly political in nature.  *E.g., FAN*, 395 F. Supp. 3d at 1307 (holding that "[i]mmunity under the Communications Decency Act does not contain a political speech exception" and that "[n]o distinction is made [under the CDA] between political speech and non-political speech").  Likewise, here, the act that Google allegedly conducted in a discriminatory manner is the removal of posts in which Kennedy discusses medical misinformation—an act equally protected from liability under Section 230.

**Content Provided by Another.**  Finally, it is clear here that all of the content at issue—videos of Kennedy—were "provided by another information content provider" besides Google.  47 U.S.C. § 230(c)(1).  Kennedy alleges that the March 2023 NHIOP speech was posted by Manchester Public Television, FAC ¶ 20, and that other content is posted "by him or by third

parties who support him," *id.* ¶¶ 64-65.  There is no allegation that Google or YouTube provided the content about which Kennedy complains Google removed.

Thus, Section 230 preempts Kennedy's state law claim and should be dismissed.

### 2.    The Free Speech Claim Fails on the Merits

Kennedy's state constitutional claim also fails on the merits because it advocates for a dramatic expansion of California's free speech jurisprudence that courts, to date, have expressly rejected and that no court has approved.

California's free speech clause, set forth in Article I, section 2 of the California Constitution, protects only against state action.  *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013 (2001).  Kennedy's FAC cites *Robins v. Pruneyard Shopping Center*, FAC ¶ 69, where the California Supreme Court recognized a limited extension of this principle, holding that the free speech clause also applied to privately owned shopping centers.  23 Cal. 3d 899, 910 (1979); *see also Golden Gateway Ctr.*, 26 Cal. 4th at 1033 (clarifying that the *Pruneyard* principle applies "only if the property is freely and openly accessible to the public").

"However, no court has extended the *Pruneyard* line of cases, which concern physical property, to the Internet," as Kennedy invites this Court to do.  *Divino*, 2022 WL 4625076, at *7; *see* FAC ¶ 71.  And, indeed, multiple courts have rejected similar invitations to extend the *Pruneyard* principle to Internet companies, including Google.  *See Divino*, 2022 WL 4625076, at *7; *Prager Univ.*,  2019 WL 8640569, at *5; *Newman v. Google LLC*, No. 20-cv-04011-VC, 2022 WL 2556862, *3 (N.D. Cal. July 8, 2022); *see also Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. 2020); *hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017) ("The analogy between a shopping mall and the Internet is imperfect, and there are a host of potential 'slippery slope' problems that are likely to surface were *Pruneyard* to apply to the Internet.").

For instance, in *Divino Group*, the court rejected a *Pruneyard* claim alleging that Google "operate[s] and maintain[s] YouTube as 'a public forum, or its functional equivalent,'" and that it had improperly "'restricted the speech and expressive conduct of the Proposed Class' through censorship of their videos based on subjective, vague, and overbroad criteria."  2022 WL 4625076,

-22-

1   at *7.  The Court agreed with the "concerns expressed by other courts about the advisability of

2   such a 'dramatic expansion of [*Pruneyard*],'" and thus dismissed plaintiffs' claim with prejudice.

3   *Id.* at *8.  A California court reached the same conclusion in *Prager*, 2019 WL 8640569, at *6

4   ("[Plaintiff] does not persuade the Court that [YouTube's] services are freely open to the public or

5   the functional equivalent of a traditional public forum like a town square or a central business

6   district.").  This Court should follow suit.

7         **C.**     **Google's First Amendment Rights Bar Kennedy's Claims**

8         The complaint should also be dismissed for the separate reason that Kennedy's requested

9   relief is precluded by *Google's* First Amendment rights.  *E.g.*, *O'Handley*, 579 F. Supp. 3d at

10  1187–88 (dismissing similar claims on pleadings because "Twitter has important First

11  Amendment rights that would be jeopardized by a Court order telling Twitter what content-

12  moderation policies to adopt and how to enforce those policies").

13        The "choice of material to" publish "and the decisions made" as to the "treatment of public

14  issues and public officials—whether fair or unfair—constitute the exercise of editorial control and

15  judgment" and are protected by the First Amendment.  *Tornillo*, 418 U.S. at  257–58.  This

16  fundamental First Amendment principle has been extended to online platforms' decisions

17  regarding what content to host, serve, and remove in recognition of the idea that "[w]hen a

18  platform selectively removes what it perceives to be . . . public-health misinformation, it conveys a

19  message and thereby engages in 'speech' within the meaning of the First Amendment."

20  *NetChoice, LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1210 (11th Cir. 2022), *cert granted sub nom.*

21  *Moody v. NetChoice, LLC*, No. 22-277 (Sept. 29, 2023)[8]; *O'Handley*, 579 F. Supp. 3d at 1186–88,

22  *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023); *Mac Isaac v. Twitter, Inc.*, 557

23  F. Supp. 3d 1251, 1261 (S.D. Fla. 2021); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629

24  (E.D. Va. 2019), *aff'd*, 774 F. App'x 162 (4th Cir. 2019); *Volokh v. Jame*s, No. 22-CV-10195

25  (ALC), 2023 WL 1991435, at *6 (S.D.N.Y. Feb. 14, 2023).

26

27  [8] After the Fifth Circuit issued a decision disagreeing with the Eleventh Circuit, the Supreme

28  Court granted certiorari in both cases.  *See NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), *cert. granted* No. 22-555 (Sept. 29, 2023).

1    In *O'Handley*, Judge Breyer applied *Tornillo* and Ninth Circuit precedent to hold that near-

2   identical claims against Facebook and Twitter relating to their removal of medical misinformation

3   were barred as a matter of law by the First Amendment.  579 F. Supp. 3d at 1186–88.  The court

4   held that Twitter's decisions regarding removal of content and accounts from its platform are

5   "expressive" acts and the "notion that Twitter should be powerless to do anything but post its own

6   tweets responding to every tweet on its platform that spreads misinformation makes very little

7   sense from either a legal or practical perspective." *Id.* at 1186, 1188.

8    Google's content removal decisions are likewise expressive acts.  As this Court has

9   recognized, Google has "a strong interest in the application of its own content moderation policies

10   in maintaining users' trust and expectations on its privately hosted platform."  TRO Order at 9

11   (internal quotation marks omitted).  Google's policies are a direct reflection of its "belie[fs]" about

12   what "people should be able to share" on its platform.  FAC Ex. B (Vaccine Misinformation

13   Policy).  They also reflect Google's "priorit[ies]"—in this case, "[t]he safety of [its] creators,

14   viewers, and partners." *Id.* Ex. A (COVID-19 Medical Misinformation Policy).  Thus, Kennedy's

15   claim against Defendants for the removal of content pursuant to their misinformation policies is

16   barred by the First Amendment.[9]

17   **V.    CONCLUSION**

18    For these reasons, the Court should dismiss the FAC with prejudice.

19

20    DATED:  October 3, 2023                MUNGER, TOLLES & OLSON LLP

21

22                                           By    */s/ Jonathan H. Blavin*

23                                           JONATHAN H. BLAVIN
                                             Attorneys for Defendants
24                                           Google LLC and YouTube, LLC

25

26

27   [9] Google's First Amendment rights also preclude an injunction in favor of Kennedy irrespective of
     whether this court determines that Google's removal of Kennedy's content constituted state action.
28   *See Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971); *Carlin
     Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1296–97 (9th Cir. 1987).