Scott J. Street (SBN 258962)
**JW HOWARD/ATTORNEYS, LTD.**
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

John W. Howard (SBN 80200)
Andrew G. Nagurney (SBN 301894)
**JW HOWARD/ATTORNEYS, LTD.**
600 West Broadway, Suite 1400
San Diego, CA 92101
Tel.: (619) 234-2842
Email: johnh@jwhowardattorneys.com

Attorneys for Plaintiff,
ROBERT F. KENNEDY, JR.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT F. KENNEDY, JR., | Case No. 3:23-cv-03880-TT |
| Plaintiff, | [Assigned to the Hon. Trina Thompson] |
| vs. | **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| GOOGLE LLC, a Delaware corporation, and YOUTUBE, LLC, a Delaware corporation, | |
| Defendants. | Date:   November 7, 2023<br>Time:   2:00 p.m.<br>Crtrm: 9 |

///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

# **TABLE OF CONTENTS**

Pages

I.    INTRODUCTION……………………………………………………………7

II.   ARGUMENT……………………………………………………….…...…8

   A. Google's Actions Satisfy Several Aspects of the State Action Tests…....…8

   B. Google's Viewpoint Discrimination Violates Federal and State Law……13

   C. Google Does Not Have a First Amendment Right to Censor……………15

   D. The Balance of Equities Strongly Supports Granting Relief……………..18

   E. Discovery Will Show Exactly the Extent to which Google Collaborates
      with the Government to Censor Messages the Government Disapproves
      Of……………………………………….………………………….…..20

III.  CONCLUSION…………………………………….……………………21

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION                    CASE NO. 3:23-cv-03880-TT

1

2

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

**TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*Am. LegalNet, Inc. v. Davis*,

   673 F. Supp. 2d 1063 (C.D. Cal. 2009)……………………………..…………20

*Barrett v. Rosenthal*,

   40 Cal.4th 33 (2006)……………………………………………………………...11

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,

   531 U.S. 288 (2001)……………………………………………………………9

*Carafono v. Metrosplash.com*,

   339 F.3d 1119 (9th Cir. 2003)………………………………………………...19

*Changizi v. Department of Health & Human Services*,

   2023 WL 5965931 (6th Cir. Sept. 14, 2023)…………………..…………...…13

*Children's Health Defense v. Facebook, Inc.*,

   546 F. Supp. 3d 909 (N.D. Cal. 2021)…………………………………………12

*Cmty. House, Inc. v. City of Boise*,

   490 F.3d 1041 (9th Cir. 2007)……………………………..……………………18

*Daniels v. Alphabet, Inc.*,

   No. 20-cv-04687-VKD, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)………12

*Davison v. Randall*,

   912 F.3d 666 (4th Cir. 2019)……………………………………………………..11

*Denver Area Ed. Telecomms. Consortium, Inc. v. FCC*,

   518 U.S. 727 (1996)……………………………………………………...13

*Doe v. Harris*,

   772 F.3d 563 (9th Cir. 2014)…………………………………………………18

*Elrod v. Burns*,

   427 U.S. 347 (1976)…………………………………………………………...18

3

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION          CASE NO. 3:23-cv-03880-TT

*Hart v. Facebook, Inc.*,

    2023 WL 3362592 (N.D. Cal. May 9, 2023)…………………...……....……13

*Howerton v. Gabica*,

    708 F.2d 380 (9th Cir. 1983)……………………………………………....9

*Informed Consent Action Network v. YouTube LLC*,

    582 F. Supp. 3d 712 (N.D. Cal. 2022)…………………………..……….13

*Farris v. Seabrook*,

    677 F.3d 858 (9th Cir. 2012)…………………………………………….18

*Fashion Valley Mall, LLC v. Nat'l Labor Relations Bd.*,

    42 Cal.4th 850 (2007)……………………………………….…………14

*Firearms Pol'y Coal. Second Amend. Def. Comm. v. Harris*,

    192 F. Supp. 3d 1120 (E.D. Cal. 2016)………………………………….18

*Hart v. Facebook, Inc.*,

    2023 WL 3362592 (N.D. Cal. May 9, 2023)……………………….....….12

*hiQ Labs, Inc. v. LinkedIn Corp.*,

    273 F. Supp. 3d 1099 (N.D. Cal. 2017)………………………………….14

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,

    515 U.S. 557 (1995)……………………………………….…………16, 17

*Kennedy v. Warren*,

    66 F.4th 1199 (9th Cir. 2023)……………………………………………10

*Klein v. City of San Clemente*,

    584 F.3d 1196 (9th Cir. 2009)…………………………………………....18

*L.A. Alliance for Survival v. City of Los Angeles*,

    22 Cal.4th 352 (2000)……………………………………………………14

*Lee v. Katz*,

    276 F. 3d 550 (9th Cir. 2020)……………………………………….10, 21

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

4

*Lugar v. Edmondson Oil Company*,

    457 U.S. 922 (1982)……………………………………………….…………...…10

*Manhattan Community Access Corporation v. Halleck*,

    139 S. Ct. 1921 (2019)………………………...……………………………12

*Mathis v. Pacific Gas & Electric Company*,

    891 F.2d 1429 (9th Cir. 1989)……………………………………………21

*Miami Herald Publishing Company v. Tornillo*,

    418 U.S. 241 (1974)……………………………………………….……16, 17

*NetChoice, L.L.C. v. Paxton*,

    49 F.4th 439 (5th Cir. 2022)…………………………………….……..16

*O'Handley v. Weber*,

    62 F.4th 1145 (9th Cir. 2023)…………………………………....….......7, 10, 13

*Pacific Gas & Electric Company v. Public Utilities Commission of Calif.*,

    475 U.S. 1 (1986) …………………………………………...........16, 21

*Packingham v. North Carolina*,

    137 S. Ct. 1730 (2017)……………………………………………11, 14

*Prager University v. Google LLC*,

    951 F.3d 991 (9th Cir. 2020)……………………………………10, 11

*Pruneyard Shopping Center v. Robins*,

    447 U.S. 74 (1980)……………………………………………...14, 15

*Robins v. Pruneyard Shopping Center*,

    23 Cal. 3d 899 (1979)………………………………………………...11, 14

*Robinson v. Hunt Cty., Texas*,

    921 F.3d 440 (5th Cir. 2019)…………………………………………..11

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,

    547 U.S. 47 (2006) ………...……………………………………17

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

*Skinner v. Railway Labor Executives' Association,*

  489 U.S. 602 (1989)………………………….………………..20

*State v. Biden,*

  2023 WL 6425697 (5th Cir. Oct. 3, 2023) ………………..…..7, 9, 10, 13, 20

*Stossel v. Meta Platforms, Inc.,*

  634 F. Supp. 3d 743 (N.D. Cal. 2022)…………………………………11

*Stratton Oakmont, Inc. v. Prodigy Services Company,*

  1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995)……………………………...15

*Summit Bank v. Rogers,*

  206 Cal. App. 4th 669 (2012)…………………………………………………11

*Warsoldier v. Woodford,*

  418 F.3d 989 (9th Cir. 2005)……………………………….…………18

**Statutes**

47 U.S.C. § 230 ……………………………….…………….……7, 15, 19

**Other**

H.R. REP. No. 104-458 (1996)……………………………………………………15

Genevieve Lakier, *The Non-First Amendment Law of Freedom of Speech,* 134

  Harv L. Rev. 2299 (2021) ……………………………………………………14

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION          CASE NO. 3:23-cv-03880-TT

Plaintiff Robert F. Kennedy, Jr., submits the following reply brief in support of his motion for a preliminary injunction.

## I.   <u>INTRODUCTION</u>

The dispute over technology companies' censorship of government dissent may be the defining legal issue of our time. After all, American democracy depends on the free exchange of ideas. The tech companies themselves once believed that. They lobbied for a law—section 230 of the Communications Decency Act of 1996—that gave them significant legal protection in exchange for creating an environment that would *promote* the free exchange of ideas while preserving their ability to restrict access to violate and harassing content.[1]

Companies like Google have turned that environment on its head. Now they argue that they can *prevent* the free exchange of ideas on publicly accessible websites like YouTube, free of judicial review, even when the people they censor are government critics like Kennedy and when Google censors those people, and their messages, because the government demands it.

The Fifth Circuit Court of Appeals recently ruled that this public/private censorship project, which accelerated during the COVID-19 pandemic, and which reached new heights after Joe Biden took office, violates the First Amendment. *State v. Biden*, -- F.4th --, 2023 WL 6425697 (5th Cir. Oct. 3, 2023) (per curiam). It was correct. And its ruling was consistent with the Ninth Circuit's opinion in *O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023), which acknowledged that "[a] constitutional problem would arise if Twitter had agreed to serve as an arm of the government, thereby fulfilling the State's censorship goals."

Google's opposition brief did not show otherwise. It made the same conclusory arguments it has made throughout this case. It does not believe it can *ever* be held to constitutional scrutiny. It contends that it is a publisher, with all the First Amendment

---

[1] Unless noted otherwise, defined terms have the meaning given to them in the motion.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1   rights that publishers have, but none of the responsibilities. It is wrong. Nobody

2   believes that Google endorses the speech that appears in the millions of videos posted

3   to YouTube. And the fact that it does not remove all videos of Kennedy's speech

4   shows just how arbitrary its misinformation policy is. If anything, that exacerbates the

5   constitutional problem.

6       It is time to recognize that the publicly accessible parts of YouTube are public

7   forums and that Google engages in a public function when it works with the

8   government to control the messages people hear in that forum. Under those

9   circumstances, Google's actions are fairly attributable to the government and justify

10   the preliminary injunction Mr. Kennedy seeks.

11   **II.    ARGUMENT**

12       The Court should grant the motion to protect the free exchange of ideas that

13   will be critical during the next presidential election.

14   **A. Google's Actions Satisfy Several Aspects of the State Action Tests.**

15       The motion seeks to enjoin Google from using its current medical

16   misinformation policy to remove Mr. Kennedy's speech from YouTube during the

17   2024 presidential election.

18       The motion described the current policy at length. ECF 49 at 14-15. It explained

19   why it violates the First Amendment, via the state action doctrine. *Id.* at 19-30. Instead

20   of addressing those issues head on, Google argued that the misinformation policy it

21   used to censor Kennedy's speech is an old policy, something it adopted years ago,

22   before there was any evidence of Google working with the government to develop it.

23       The record shows otherwise. In fact, Google itself referred to the "Vaccine

24   misinformation policy" that it used to censor Kennedy's speech as "a new policy that

25   [Google was] working on … to combat harmful COVID-19 misinformation on

26   [YouTube]." Street Decl., Exh. G, at 33. That is the policy that Google developed in

27   response to the executive branch's demands and in cooperation with executive branch

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1   officials. Street Decl., Exhs. F-T.

2       Google's other arguments also fail. It tried to fit this case into one of the four

3   "tests" that courts often use to decide whether state action exists. But the Ninth Circuit

4   has held that "there is no specific formula for defining state action." *Howerton v.*

5   *Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) (quotations omitted). The Supreme Court

6   has also described the tests as guideposts and said the state action "criteria lack rigid

7   simplicity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288,

8   295 (2001). The goal is to decide whether "seemingly private behavior may be fairly

9   treated as that of the State itself." *Id.* (quotations omitted).

10      That matters here because Google's actions satisfy several aspects of the

11  various state action tests and show that, at root, it is the government, not Google

12  acting independently, that is responsible for removing Kennedy's speech from

13  YouTube. After all, the policy is supposed to block "medical misinformation." But

14  what is that? It is not speech that a Google/YouTube employee has determined to be

15  false, dangerous (whatever that means), or misleading. It is speech that government

16  officials deem false, dangerous, or misleading. Street Decl., Exhs. C, D.

17      This is the same record the plaintiffs developed in *Biden* and which the Fifth

18  Circuit found to violate the First Amendment. The motion discussed the Fifth

19  Circuit's reasoning at length. ECF 49 at 19-22. Google could not distinguish it. It

20  mentioned *Biden's* discussion of the "coercion" test. We have not focused on coercion

21  in this case yet because the best evidence of coercion gathered in *Biden* focused on

22  Facebook and Twitter. (That could change after discovery, of course.) But the

23  coercive environment that the Biden Administration created during 2021, and the Fifth

24  Circuit's discussion of it, is relevant to assessing Google's actions.

25      Moreover, coercion is just one part of the "close nexus" test. *See Biden*, 2023

26  WL 6425697, at *12. The other part is the "significant encouragement" doctrine,

27  which can be established by showing the government's "entanglement in a party's

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1   independent decision-making or (2) direct involvement in carrying out the decision

2   itself." *Id.* at *18. As in *Biden*, that entanglement exists here. Thus, it does not matter

3   if a Google employee (not a government official) decides to remove a video of

4   Kennedy's speech from YouTube. The fact that the government entangled itself in the

5   policy that Google uses to justify the censorship makes the act of censorship fairly

6   attributable to the state. It triggers constitutional scrutiny.[2]

7        This does not mean that Google had to cloak itself in the power of the state or

8   exercise a state-created right or privilege, the first step of the two-step state action

9   framework the Supreme Court discussed in *Lugar v. Edmondson Oil Company*, 457

10   U.S. 922, 937 (1982). Indeed, the Ninth Circuit has "refused to apply the two-step

11   framework [from *Lugar*] rigidly, and [it has] suggested that the first step may be

12   unnecessary in certain contexts." *O'Handley*, 62 F.4th at 1157. That is the case here.

13        There is also no merit to Google's argument that, as a matter of law, YouTube

14   does not provide a public function when it censors public health critics on YouTube.

15   The Ninth Circuit suggested otherwise in *Lee* when it "conclude[d] that, in regulating

16   speech within" a public space (an outdoor space near a basketball arena), "the OAC [a

17   private entity] performs an exclusively and traditionally public function within a

18   public forum." 276 F.3d at 557. The Ninth Circuit said little about *Lee* when it

19   rejected a "public function" argument made at the pleading stage in *Prager University*

20   *v. Google LLC*, 951 F.3d 991, 997-99 (9th Cir. 2020). That was unfortunate, as the

21   plaintiff in *Prager* accurately predicted what it would be like "living under the tyranny

22   of big-tech, possessing the power to censor any speech it does not like." *Id.* at 999.

23   Mr. Kennedy finds himself in that situation now, as he heads into an election that

24   Google and its public health partners want to lose.

25

26   [2] Google also cited the discussion of coercion in *Kennedy v. Warren*, 66 F.4th1199, 1207 (9th Cir.

27   2023), but *Warren* was not a state action case. Coercion *was* the alleged constitutional violation in
*Warren*, whereas Google's government-induced and government-reliant viewpoint discrimination on

28   a publicly accessible website is the constitutional violation here.

Moreover, *Prager* did not allege, much less have evidence of, the deep entwinement between Google and government officials that this case does. If it had, the case may have turned out differently.

That is critical. "Web sites accessible to the public ... are 'public forums' for purposes of [California's] anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal.4th 33, 41, n.4 (2006); *see also Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 693 (2012) (citing cases and explaining why). California courts reached that conclusion at the urging of tech companies like Google and Facebook, who emphasized the "public" nature of their websites to get the procedural advantages of the anti-SLAPP statute. *E.g., Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 759-60 (N.D. Cal. 2022). And other courts have held that the publicly accessible portions of websites and social media platforms operated by government officials are public forums. *Robinson v. Hunt Cty., Texas*, 921 F.3d 440, 447 (5th Cir. 2019) (discussing Facebook page); *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019) (same).

The Supreme Court may decide that publicly accessible websites and social media platforms like YouTube are public forums, such that they cannot engage in viewpoint discrimination. That would make sense, as websites like YouTube resemble traditional public forums, including in their scope (nearly 3 billion active users), their influence ("expansive"), and their role as a place people come to share ideas. Street Decl., Exh. E-2. Indeed, the Supreme Court itself has called the Internet the "modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). And Google seems to believe that its content moderation policies serve a public function, as it contends that "[f]orcing Google to host and serve medical and vaccine misinformation [that is, what the government claims is misinformation] on YouTube would be contrary to important *public health goals* and the *public interest* …." ECF 51 at 23:22-23 (emphases added).

Silencing speech to serve public health goals is a public function, especially

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1    when the censor only silences messages the government does not want people to hear.

2        The Supreme Court did not say otherwise in *Manhattan Community Access*

3    *Corporation v. Halleck*, 139 S. Ct. 1921 (2019). In *Halleck*, the plaintiffs argued that a

4    private entity "exercises a traditional, exclusive public function when it operates the

5    public access [television] channels on Time Warner's cable system in Manhattan." *Id.*

6    at 1928. The majority disagreed and reversed the Second Circuit's decision, but four

7    justices dissented in an opinion that echoed the state action doctrine's liberal roots,

8    and which noted that "[t]he right to convey expressive content using someone else's

9    physical infrastructure is not new." *Id.* at 1938 (Sotomayor, Ginsburg, Breyer and

10   Kagan, JJ., dissenting).

11       Google's reliance on other state action cases from this district is misplaced. For

12   example, in *Daniels v. Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166, at

13   *7 (N.D. Cal. Mar. 31, 2021), the court found that the plaintiff (Daniels) did not allege

14   sufficient facts under a "nexus" theory because he did "not plead any facts suggesting

15   that Speaker Pelosi or Rep. Schiff were personally involved in or directed the removal

16   of Mr. Daniels's' videos [from YouTube]." Kennedy did allege such facts. FAC ¶¶

17   27-35. Similarly, in *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d

18   909, 930 (N.D. Cal. 2021), the court emphasized that the plaintiff (CHD) had not

19   "alleged that the government was actually involved in the decisions to label CHD's

20   posts as 'false' or 'misleading,' the decision to put the warning label on CHD's

21   Facebook page, or the decisions to 'demonetize' or 'shadow-ban.'" Kennedy did

22   allege such facts and he produced such evidence to support his request for preliminary

23   injunctive relief. FAC ¶¶ 27-35; Street Decl., Exhs. F-T.

24       And while the courts rejected more specific allegations of a public/private

25   censorship project in *Informed Consent Action Network v. YouTube LLC*, 582 F. Supp.

26   3d 712, 720-21 (N.D. Cal. 2022), and *Hart v. Facebook, Inc.*, No. 22-cv-737-CRB,

27   2023 WL 3362592, at *3 (N.D. Cal. May 9, 2023), those cases lacked the detailed

28

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

evidence that this case is based on. They also lacked the guidance from the Fifth Circuit's decision in *Biden*. They did not involve speech by a political candidate during a political campaign, either, a situation in which courts have been the most active in upholding free speech principles. *See, e.g., Denver Area Ed. Telecomms. Consortium, Inc., v. FCC*, 518 U.S. 727, 782-83 (1996) (O'Connor, J., concurring in part and dissenting in part) (explaining why).

Google's attempt to portray *O'Handley* as a case that involved a greater degree of entwinement and coordination than this one also fails. *O'Handley* was a one-way, information sharing case. The plaintiff "allege[d] no facts plausibly suggesting either that the [State] interjected itself into the company's internal decisions to limit access to his tweets and suspend his account or that the State played any role in drafting Twitter's Civic Integrity Policy." 62 F.4th at 1160. The FAC did allege such facts and Kennedy produced evidence to substantiate them with the motion.

That is why White House official Rob Flaherty's April 2021 email, and the partnership it led to between Google and the executive branch officials regarding vaccine-related dissent, is so significant. It shows exactly the type of situation that the Ninth Circuit said *could* violate the First Amendment in *O'Handley* and what the Fifth Circuit said *did* violate the First Amendment in *Biden*.

Google could not distinguish *Biden*. It may disagree with the Fifth Circuit's reasoning, of course, but that alone is not enough to ignore a published decision from a circuit court involving the same law and nearly identical facts. And while the Sixth Circuit upheld the dismissal of a First Amendment complaint brought against government officials in *Changizi v. Department of Health & Human Services*, -- F. 4th --, 2023 WL 5965931, at *3-4 (6th Cir. Sept. 14, 2023), it did so based on standing principles that do not apply here.

**B. Google's Viewpoint Discrimination Violates Federal and State Law.**

There is no doubt that, if the state action doctrine applies, Google's censorship

of Kennedy violates the First Amendment. ECF 49 at 26-30 (explaining why). In fact, Google did not even try to justify its viewpoint discrimination under the First Amendment.

Google did discuss the merits of Kennedy's claim that its actions violate the California Constitution's liberty of speech clause, a provision that "is broader and more protective than the free speech clause of the First Amendment." *L.A. Alliance for Survival v. City of Los Angeles*, 22 Cal.4th 352, 366-67 (2000). For example, "the California Constitution protects the right to free speech in a [privately owned] shopping mall, even though the federal Constitution does not." *Fashion Valley Mall, LLC v. Nat'l Labor Relations Bd.*, 42 Cal.4th 850, 862 (2007). This doctrine stems from the California Supreme Court's landmark decision in *Robins v. Pruneyard Shopping Center*, 23 Cal. 3d 899 (1979), which the United States Supreme Court upheld in *Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980).

Google made much of the fact that no court has extended *Pruneyard* to the internet. That may be true. But several courts have discussed the possibility. *See, e.g., hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116-17 (N.D. Cal. 2017). And American states have a rich tradition of extending free speech principles to new mediums; in fact, they have been doing that since the country's founding. *See* Genevieve Lakier, *The Non-First Amendment Law of Freedom of Speech*, 134 Harv. L. Rev. 2299, 2349 (2021) (explaining how "legislatures and regulatory agencies continued to possess considerable power to intervene in the speech marketplace when doing so promotes the same values as the First Amendment did").

This case may be the one to extend *Pruneyard* to the digital realm. After all, it concerns pure political speech, in the context of a political campaign, in a forum that is freely accessible to the public and which the Supreme Court has called the "modern public square." *Packingham*, 137 S. Ct. at 1737. And while Google may complain about that, the same objections were raised and rejected in *Pruneyard*. Indeed, the

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

1    U.S. Supreme Court specifically noted that the property owners in *Pruneyard* "can
2    expressly disavow any connection with the message [discussed on their property] by
3    simply posting signs in the area where the speakers or handbillers stand. Such signs,
4    for example, could disclaim any sponsorship of the message and could explain that the
5    persons are communicating their own messages by virtue of state law." 447 U.S. at 87.

6    So here. There is even less of a compelled speech problem here than in
7    *Pruneyard*, as no reasonable person expects Google to agree with, or endorse, the
8    speech that occurs on YouTube. Moreover, the California Constitution does not
9    prohibit all restrictions on speech. "The level of scrutiny … depends upon whether
10   [the restriction] is a content-neutral regulation of the time, place, or manner of speech
11   or restricts speech based upon its content." *Fashion Valley*, 42 Cal. 4th at 865. The
12   latter are flatly prohibited, even when the rules are imposed by private property
13   owners. *Id.* at 865-66.

14   Thus, Kennedy has shown a likelihood of success—and, at minimum, serious
15   questions going to the merits—that justify preliminary relief.

16   **C. Google Does Not Have a First Amendment Right to Censor.**

17   Google's argument that Kennedy cannot prove a First Amendment claim
18   because it has its own constitutional rights to censor people on YouTube also fails.

19   *First*, Google is not a publisher. Under section 230 of the Communications
20   Decency Act, it cannot be held liable for the content its users publish. 47 U.S.C. §
21   230(c)(1). In fact, Congress enacted section 230 in response to a decision, *Stratton*
22   *Oakmont, Inc. v. Prodigy Services Company*, 1995 WL 323710 (N.Y. Sup. Ct. May
23   24, 1995), that deemed an internet platform, over its objection, to be akin to a
24   newspaper because its content removal process "constitute[d] editorial control" over
25   the platform. *See* H.R. REP. No. 104-458, at 194 (1996) ("One of the specific
26   purposes of [section 230] is to overrule *Stratton-Oakmont v. Prodigy* and any other
27   similar decisions which have treated such providers and users as publishers….").

28

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION                    CASE NO. 3:23-cv-03880-TT

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

Google cannot have it both ways, claiming that it cannot be held liable for content posted on YouTube because it is not a publisher while asserting the rights that genuine publishers do have.

*Second*, Google does not engage in expressive activity when people post videos on YouTube. "Unlike newspapers," internet platforms like YouTube "exercise virtually no editorial control or judgment." *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 460 (5th Cir. 2022). They use "algorithms to screen out certain obscene and spam-related content. And then virtually everything else is just posted to the Platform with zero editorial control or judgment." *Id.*

That distinguishes this case from *Miami Herald Publishing Company v. Tornillo*, 418 U.S. 241 (1974). *Tornillo* involved a newspaper's challenge to a law that required the paper to give free space to political candidates its editorial board criticized. The Supreme Court declared the law unconstitutional. In doing so, it noted that "[a] newspaper is more than a passive receptacle or conduit for news, comment and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment." *Id.* at 258. The First Amendment protects that process.

Similarly, in *Pacific Gas & Electric Company v. Public Utilities Commission of California*, 475 U.S. 1 (1986) ("*PG&E*"), the Supreme Court decided that the California government could not force PG&E, a private company, to give an opponent space in a newsletter that PG&E included in its billing statements. The Court emphasized that "because access is awarded only to those who disagree with appellant's views and who are hostile to appellant's interests, appellant must contend with the fact that whenever it speaks out on a given issue, it may be forced … to help disseminate hostile views." *Id.* at 14. The Court had no problem finding that regulation to violate the First Amendment. *Id.* And in *Hurley v. Irish-American Gay,*

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

*Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 566 (1995), the Supreme Court held that a state law could not require a parade to include a group whose message the parade organizer did not want to promote.

Google described these cases as enshrining a broad constitutional right to exclude disfavored messages. Not so. They were compelled speech cases and "[t]he compelled speech violation in each … resulted from the fact that the complaining speaker's own message was affected by the speech it was forced to accommodate." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 63 (2006). For example, in *Hurley*, the law that dictated including a particular group in the parade "alter[ed] the expressive content of the parade." *Id.* (cleaned up). In *Tornillo*, the "right-of-reply statute infringed the newspaper editors' freedom of speech by altering the message the paper wished to express" about a particular candidate. *Id.* at 64. And the regulation in *PG&E* "interfered with the utility's ability to communicate its own message in its newsletter." *Id.*

Moreover, in each of these cases, the Supreme Court emphasized that the challenged action would chill speech. *See Tornillo*, 418 U.S. at 257 (noting that, due to penalties imposed by statute, "editors might well conclude that the safe course is to avoid controversy"); *PG&E*, 475 U.S. at 14 (same). No such concern exists here. To the contrary, it is Google's actions that will chill speech—and not just any speech, but speech by a presidential candidate on matters of public concern during one of the most important elections in American history.

Justice Marshall drew an important distinction between the limited nature of the forum involved in *PG&E* (billing statements) and the way the company used it. He explained that if PG&E were "to use its billing envelopes as a sort of community billboard, regularly carrying the messages of third parties, its desire to exclude a particular speaker would be deserving of lesser solicitude." 475 U.S. at 23 (Marshall, J., concurring). That is exactly what Google did with YouTube and why its desire to

remove Mr. Kennedy's political speech after the fact does not deserve the protection the Supreme Court showed in the *Tornillo* line of cases.

### D. The Balance of Equities Strongly Supports Granting Relief.

The balance of equities weighs strongly in favor of granting the motion. That is not just based on the threat to Mr. Kennedy's campaign from Google's government induced censorship, which is substantial, but on the damage that will be done to the political process if the Court allows such censorship to continue.

"The Ninth Circuit has consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). This harm "is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable." *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009); *see also Farris v. Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) (upholding preliminary injunction against state's limitations on contributions to political committees in state or county recall campaigns for this reason). This principle is so well settled that the Ninth Circuit has said a finding that the case raises "serious First Amendment questions compels a finding that ... the balance of hardships tips sharply in [the plaintiffs'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (emphasis added) (cleaned up).

Instead of recognizing those principles, Google accused Kennedy of having failed to show irreparable harm. It is wrong. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Indeed, irreparable injury is often presumed when, as here, the plaintiff alleges a "colorable First Amendment claim …." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). And it makes no difference that Kennedy has other ways of communicating with voters, as the Ninth Circuit "has repeatedly found irreparable harm to plaintiffs even where a speech

18

restriction left them free to speak in other ways." *Firearms Pol'y Coal. Second Amend. Def. Comm. v. Harris*, 192 F. Supp. 3d 1120, 1128 (E.D. Cal. 2016).

There is also no merit to Google's argument about the balance of the equities. Google cannot be held liable for content posted on YouTube. 47 U.S.C. § 230(c)(1). Thus, it will not suffer any harm if the Court enjoins it from enforcing the medical misinformation policy against Mr. Kennedy during his political campaign. And its speculation about the harm that will befall the public if it is prevented from censoring Kennedy does not outweigh the established harm to Kennedy and the political process in sanctioning government-induced censorship of political speech on YouTube.

Nor is there any merit to Google's argument that it has broad immunity from these lawsuits. ECF 53 at 26-28 (explaining why). Google's inconsistent arguments show just how far the technology industry has fallen in recent years. Congress viewed the Internet as a "forum for true diversity of … myriad avenues of intellectual activity" which "had flourished … with a minimum of government regulation." 47 U.S.C. § 230(a)(3)-(4). It enacted section 230 to preserve that "vibrant and competitive free market" while encouraging companies to develop "blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material." *Id.* § 230(b)(1)-(2), (4)-(5). That is why the Ninth Circuit has described section 230, the lynchpin of the modern Internet, as being designed "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1122 (9th Cir. 2003).

The idea that a statute designed to *promote* the free exchange of ideas on the Internet gives companies the power to *prevent* the free exchange of ideas among Americans would have been ridiculed when Congress passed the Communications Decency Act in 1996. It should be ridiculed now, too.

In fact, if, as it contends, Google has a federally created right to immunity when

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

it engages in viewpoint discrimination on YouTube, that fact strengthens the state action analysis. The Supreme Court found similar legal protections, combined with the government's direct encouragement of private action, to satisfy the state action in *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 615-16 (1989). *Skinner* also supports granting relief here.

### E. Discovery Will Show Exactly the Extent to which Google Collaborates with the Government to Censor Messages the Government Disapproves Of.

This case raises serious questions about serious matters that affect the foundation of American democracy, and which could have a profound impact on both this election and all future elections.

Judge Doughty recognized that in *Biden*. That is why he allowed discovery. The discovery showed the degree of cooperation between the federal government and the technology companies that other courts had dismissed as implausible, including coercive messages sent by White House officials to Facebook and Twitter executives.

Discovery in this case could show the same level of coercion directed at Google. So far, we only have the evidence the plaintiffs gathered in *Biden*. And while that evidence is enough to find state action under other tests, additional discovery will show the full extent to which Google has collaborated with (or been coerced by) the executive branch of the federal government to censor speech the government does not Americans to hear, including speech by the president's current political opponent.

There is good cause to allow that discovery now. Google cannot credibly claim otherwise. It argued that "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). But Kennedy did not make that argument. We gathered evidence from other cases and explained why that evidence, which includes evidence related to Google, warrants additional discovery here.

Moreover, the facts alleged in the First Amended Complaint, accepted as true

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

and liberally construed in Kennedy's favor, do state a plausible claim to relief. ECF 53 at 14-30 (explaining why). Thus, discovery will eventually occur in this case. Given the important interests at stake, and the exigency of the 2024 campaign, discovery should occur now, with the Court continuing the preliminary injunction hearing if necessary to accommodate that process.

Other courts may have decided state action cases on the pleadings. But not always. *Rawson* was decided on summary judgment. *Lee* was decided after a bench trial. And in *Mathis v. Pacific Gas & Electric Company*, 891 F.2d 1429, 1433-34 (9th Cir. 1989), the Ninth Circuit rejected the district court's "conclusion that Mathis' allegations of governmental coercion or encouragement are frivolous or wholly without merit." Thus, the Court reversed the trial court's dismissal of the claim. *Id.* at 1434. The same should be done here. This case will continue one way or another.

### III. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Kennedy respectfully requests that the Court grant the motion and enjoin Google from using its medical misinformation policy to remove videos of Kennedy's speech from YouTube during the 2024 campaign.

DATED:  October 13, 2023          JW HOWARD/ATTORNEYS, LTD.



By:  */s Scott J. Street*
_____
     Scott J. Street
     Attorneys for Plaintiff
     ROBERT F. KENNEDY, JR.

JW HOWARD/ ATTORNEYS, LTD.
600 WEST BROADWAY, SUITE 1400
SAN DIEGO, CALIFORNIA 92101

## **CERTIFICATE OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed by JW Howard/Attorneys, LTD. in the County of San Diego, State of California. My business address is 600 West Broadway, Suite 1400, San Diego, California 92101.

On October 13, 2023 I caused the **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** to be filed and served via the Court's Electronic Service upon the parties listed on the Court's service list for this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on October 13, 2023 at San Diego, California.

*/s/ Dayna Dang*                                   _
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com

REPLY BRIEF ISO MOTION FOR PRELIMINARY INJUNCTION          CASE NO. 3:23-cv-03880-TT