1  JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
2  JULIANA M. YEE (State Bar No. 304564)
Juliana.Yee@mto.com
3  CARSON SCOTT (State Bar No. 339868)
Carson.Scott@mto.com
4  MUNGER, TOLLES & OLSON LLP
560 Mission Street
5  Twenty-Seventh Floor
San Francisco, California 94105-2907
6  Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077
7
HELEN E. WHITE (*pro hac vice*)
8  Helen.White@mto.com
MUNGER, TOLLES & OLSON LLP
9  601 Massachusetts Avenue NW, Suite 500 E
Washington, DC 20001
10  Telephone:     (202) 220-1100
Facsimile:      (202) 220-2300
11
Attorneys for Google LLC and YouTube, LLC
12
UNITED STATES DISTRICT COURT
13
NORTHERN DISTRICT OF CALIFORNIA
14
SAN FRANCISCO DIVISION
15

16

17  ROBERT F. KENNEDY, JR.,                    Case No. 3:23-cv-03880-TLT

18           Plaintiff,                        **DEFENDANTS' REPLY IN SUPPORT OF
                                               MOTION TO DISMISS PLAINTIFF'S
             vs.                               FIRST AMENDED COMPLAINT**
19
GOOGLE LLC AND YOUTUBE, LLC,                  Judge:    Hon. Trina Thompson
20                                             Date:     January 16, 2024
             Defendants.                       Time:     2:00 pm
21                                             Crtrm:    9

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<strong>Page</strong>

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT ......................................................................................................2

    A.    Kennedy Cannot Salvage His Fundamentally Defective State Action Allegations ................................................................................................2

        1.    Reliance on Governmental Guidance Does Not Constitute State Action ................................................................................................2

        2.    Kennedy Fails to Credibly Distinguish *O'Handley* ......................................3

        3.    Kennedy's Analogies to Pre-*O'Handley* Cases and an Out-of-Circuit Decision Cannot Save His Claim ................................................................7

        4.    Binding Precedent Forecloses Kennedy's Public Function Argument .........9

    B.    Kennedy Mounts No Meaningful Defense of His State Law Claim .......................11

        1.    Kennedy Cannot Avoid Section 230(c)(1)'s Preemptive Scope ................11

        2.    Kennedy Concedes This Claim Is Unprecedented .......................................14

    C.    This Court Should Reject Kennedy's Attempt to Strip Google of Its First Amendment Rights ................................................................................................14

III.    CONCLUSION ................................................................................................15

DEFENDANTS' REPLY I/S/O MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Al-Ahmed v. Twitter, Inc.*,
 603 F. Supp. 3d 857 (N.D. Cal. 2022) ..............................................................................13

*APL Co. Pte. Ltd. v. UK Aerosols Ltd., Inc.*,
 452 F. Supp. 2d 939 (N.D. Cal. 2006) ................................................................................1

*Barnes v. Yahoo!, Inc.*,
 570 F.3d 1096 (9th Cir. 2009)..............................................................................11, 12, 13

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003)............................................................................................14

*Blum v. Yaretsky*,
 457 U.S. 991 (1982) ............................................................................................................4

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
 531 U.S. 288 (2001) ............................................................................................................7

*Changizi v. Dep't of Health & Hum. Servs.*,
 82 F.4th 492 (6th Cir. 2023)...............................................................................................9

*Children's Health Def. v. Facebook, Inc.*,
 546 F. Supp. 3d 909 (N.D. Cal. 2021) ........................................................................1, 3, 7

*Daniels v. Alphabet, Inc.*,
 No. 20-cv-04687-VKD, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021)...........................1, 7

*Darnaa, LLC v. Google, Inc.*,
 No. 15-cv-03221-RMW, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) .................................12

*Domen v. Vimeo, Inc.*,
 433 F. Supp. 3d 592 (S.D.N.Y. 2020) ................................................................................13

*Fair Hous. Council of San Fernando Valley v. Roommates.com*,
 LLC, 521 F.3d 1157 (9th Cir. 2008)............................................................................11, 12

*Fed. Agency of News LLC v. Facebook, Inc.*,
 432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...............................................................................1

*Force v. Facebook, Inc.*,
 934 F.3d 53 (2d Cir. 2019)................................................................................................14

*Genasys Inc. v. Vector Acoustics, LLC*,
 638 F. Supp. 3d 1135 (S.D. Cal. 2022) ..............................................................................5

*Green v. YouTube, LLC*,
 No. 18-cv-203-PB, 2019 WL 1428890 (D.N.H. Mar. 13, 2019) ............................................12

*Hart v. Facebook Inc.*,
   No. 22-CV-00737-CRB, 2022 WL 1427507 (N.D. Cal. May 5, 2022) ..............................1, 6, 7

*Hart v. Facebook Inc.*,
   No. 22-cv-737-CRB, 2023 WL 3362592 (N.D. Cal. May 9, 2023)................................6, 7, 8

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   273 F. Supp. 3d 1099 (N.D. Cal. 2017) ........................................................................11, 14

*Informed Consent Action Network v. YouTube LLC*,
   582 F. Supp. 3d 712 (N.D. Cal. 2022) ............................................................................1, 3, 6

*Kennedy v. Google LLC*,
   No. 23-16141 (9th Cir. Sept. 11, 2023) .................................................................................4

*Lee v. Katz*,
   276 F.3d 550 (9th Cir. 2002) ..................................................................................................7

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ................................................................................................................3

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) ......................................................................................................9, 10

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974) ..........................................................................................................14, 15

*Missouri v. Biden*,
   No. 23-30445, 2023 WL 6425697 (5th Cir. Oct. 3, 2023), *cert. granted sub*
   *nom. Murthy v. Missouri*, No. 23-411, 2023 WL 6935337 (S. Ct. Oct. 20, 2023) .................8, 9

*Murthy v. Missouri*,
   No. 23A243 (S. Ct. Oct. 20, 2023) .........................................................................................8

*NetChoice LLC v. Att'y Gen., Fla.*,
   34 F.4th 1196 (11th Cir. 2022), *cert. granted sub nom Moody v. NetChoice,*
   *LLC*, No. 22-277 (S. Ct. Sept. 29, 2023)....................................................................12, 14, 15

*NetChoice, LLC v. Paxton*,
   49 F.4th 439 (5th Cir. 2022), *cert. granted* No. 22-555 (S. Ct. Sept. 29, 2023) ......................12

*O'Handley v. Padilla*,
   579 F. Supp. 3d 1163 (N.D. Cal. 2022) ....................................................................12, 14, 15

*O'Handley v. Weber*,
   62 F.4th 1145 (9th Cir. 2023)...................................................................................... 1, passim

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n*,
   475 U.S. 1 (1986) ..................................................................................................................15

*Prager Univ. v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020)........................................................................................8, 9, 10

*Rawson v. Recovery Innovations, Inc.*,
   975 F.3d 742 (9th Cir. 2020)...................................................................................................8

*Rutman Wine Co. v. E. & J. Gallo Winery*,
　　829 F.2d 729 (9th Cir. 1987)..................................................................................1

*Sikhs for Justice "SFJ", Inc. v. Facebook*,
　　144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017)......12

*Volokh v. James*,
　　No. 22-CV-10195 (ALC), 2023 WL 1991435 (S.D.N.Y. Feb. 14, 2023) ................12

*Zhang v. Baidu.com Inc.*,
　　10 F. Supp. 3d 433 (S.D.N.Y. 2014) ........................................................................15

**STATE CASES**

*Chaker v. Mateo*,
　　209 Cal. App. 4th 1138 (Ct. App. 2012) ..................................................................11

*ComputerXpress, Inc. v. Jackson*,
　　93 Cal. App. 4th 993 (Ct. App. 2001) ......................................................................11

*Prager Univ. v. Google LLC*,
　　85 Cal. App. 5th 1022 (Ct. App. 2022)................................................................12, 13

*Prager Univ. v. Google LLC*,
　　No. 19CV340667, 2019 WL 8640569 (Cal. Super. Ct. Nov. 19, 2019) ..................11

*Summit Bank v. Rogers*,
　　206 Cal. App. 4th 669 (Ct. App. 2012) ....................................................................11

**FEDERAL STATUTES**

47 U.S.C. § 230 ........................................................................................... 2, passim

**STATE STATUTES**

Cal. Civ. Proc. Code § 425.16....................................................................................11

## I.      INTRODUCTION

Kennedy's Opposition confirms that this case should be dismissed on the pleadings.

The state action allegations of the First Amended Complaint ("FAC") are based on the same essential allegations and documents submitted with the TRO, which fail to state a plausible state action claim under the Ninth Circuit's binding case law in *O'Handley v. Weber*, 62 F.4th 1145, 1155–56 (9th Cir. 2023).  The Opposition's attempts to resuscitate the case by deflecting *O'Handley* and relying heavily on an out-of-circuit decision fall well short of establishing that "this is one of the *exceptional cases* in which a private entity will be treated as a state actor for constitutional purposes." *Id.* (emphasis added).

Kennedy's plea for discovery is an admission that his allegations are deficient.  "The purpose of [Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints *without* subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (emphasis added); *see also APL Co. Pte. Ltd. v. UK Aerosols Ltd., Inc.*, 452 F. Supp. 2d 939, 945 (N.D. Cal. 2006) ("[P]laintiff is required to state a viable claim at the outset, not allege deficient claims and then seek discovery to cure the deficiencies.").  The Court should not judge Kennedy's defective allegations by a relaxed standard simply because, in Kennedy's view, the state action doctrine is a "fact intensive inquiry."  Opposition to Motion to Dismiss ("Opp.") at 18.  In fact, courts regularly and consistently dismiss similar claims asserting "state action" on the pleadings and as a matter of law without permitting any discovery. *See, e.g.*, *O'Handley*, 62 F.4th at 1153; *Informed Consent Action Network v. YouTube LLC*, 582 F. Supp. 3d 712, 722 (N.D. Cal. 2022) ("*ICAN*") (Google is not a state actor); *Daniels v. Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166, at *13 (N.D. Cal. Mar. 31, 2021) (same); *Hart v. Facebook Inc.*, No. 22-CV-00737-CRB, 2022 WL 1417507, at *8 (N.D. Cal. May 5, 2022) ("*Hart I*") (Facebook is not a state actor); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1124–25 (N.D. Cal. 2020) ("*FAN*") (same); *Children's Health Def. v. Facebook, Inc.*, 546 F. Supp. 3d 909, 930 (N.D. Cal. 2021) (same).  Moreover, the significant amount of company correspondence and deposition transcripts Kennedy already has obtained from discovery in *Missouri v. Biden*—far exceeding what plaintiffs typically obtain prior to a motion to dismiss—

belies Kennedy's claim that further discovery in this case is likely to prove fruitful for him.  The Court reviewed those materials in ruling on Kennedy's TRO application and concluded they reflected little more than "consultation and information sharing" between federal officials and Google and could not establish state action.  Order on Application for Temporary Restraining Order ("TRO Order"), Dkt. 32, at 7.  Kennedy's suggestion that there might be yet additional documents beyond the many innocuous communications produced in *Missouri* is wishful thinking.

To the extent the Court exercises supplemental jurisdiction over Kennedy's state law claim, it can readily dismiss it.  Kennedy has mounted no credible argument for avoiding Section 230 immunity.  Well-established law makes clear that Section 230 applies to claims like this one seeking to hold Google liable for its decision to remove certain content from its platform.  As to the merits, Kennedy admits that *Pruneyard*-style claims seeking to hold private companies liable for violating California's constitutional free speech protections in shopping centers and other physical spaces accessible to the public do not apply in the Internet context and that judges in this District and elsewhere have expressly declined to extend such claims into the digital realm.  The Court should decline Kennedy's invitation to break new ground on this matter of state law.

The Court should grant Google's motion to dismiss with prejudice.

## II.    ARGUMENT

### A.    Kennedy Cannot Salvage His Fundamentally Defective State Action Allegations

Kennedy raises a variety of thinly-reasoned arguments in his attempt to save his facially defective allegations regarding the state action doctrine.  None has any merit.

#### 1.    Reliance on Governmental Guidance Does Not Constitute State Action

Kennedy cites no authority for his leading argument that the state action doctrine applies because Google "looks to the Government" to decide what information qualifies as medical misinformation.  Opp. at 14.  That is because there is none.  Rather, as the case law cited in Google's Motion to Dismiss the FAC ("Motion") makes clear, Google may seek expert guidance on medical science from any source it wants—including experts employed by the government— provided it does not "cede control" over the ultimate content moderation decision.  *O'Handley*, 62

F.4th at 1154.  Furthermore, a private company's decision to adopt a public health framework to guide its decisions regarding content moderation *undermines* an inference of state action, because it shows that the company "maintained 'independent professional judgment' to make decisions about the content on their platforms."  Mot. at 17 (quoting *ICAN*, 582 F. Supp. 3d at 721–22 and discussing *Children's Health Def.*, 546 F. Supp. 3d at 927–28).  Kennedy offers no rebuttal to these cases.

Adopting Kennedy's rationale that private companies' voluntary decisions to adopt governmental guidance somehow shows those companies are an arm of the government would threaten to transform huge swaths of private conduct into state action.  Innumerable private companies rely on the government's guidance regarding a broad array of topics, ranging from food safety to consumer protection to environmental protection and beyond, to structure their conduct and policies.  The state action doctrine was never intended to reach such decisions.  As the Supreme Court has made clear, "[c]areful adherence to the 'state action' requirement" is critical to "preserve[] an area of individual freedom" by "requir[ing] courts to respect the limits of their own power as directed against state governments and private interests."  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936–37 (1982).

Nor do Kennedy's allegations show that Google relied on the federal government for its medical misinformation guidance in any event.  The FAC alleges that YouTube does not allow content that contradicts "local health authorities'" or "the World Health Organization's" guidance regarding medical misinformation.  FAC ¶ 51.  Google's reliance on the WHO and local health authorities as sources of official information undermine Kennedy's claim that the policies were designed to ban speech with which the *federal government* disagrees.  After all, the WHO is not part of or controlled by the federal government.  *See* About Us, WHO, https://www.who.int/about (last visited Oct. 16, 2023).  As courts have made clear, Google's "decision to look to the WHO further suggests that the federal government has not created a 'rule of decision.'"  *ICAN*, 582 F. Supp. 3d at 721 n.4; *accord Children's Health Def.*, 546 F. Supp. 3d at 927–28.

### 2.  Kennedy Fails to Credibly Distinguish *O'Handley*

This Court correctly ruled in denying Kennedy's TRO that it "is bound by *O'Handley v.*

*Weber* as the controlling authority for determining whether a social media platform has been rendered a state actor."  TRO Order at 5.  Kennedy has likewise acknowledged this Court's ruling that "*O'Handley* is controlling here and that it precludes relief in a case like this."  Appellant's Emergency Motion for Injunction Pending Appeal, at 29–30, *Kennedy v. Google LLC*, No. 23-16141 (9th Cir. Sept. 11, 2023).  Kennedy's Opposition fails to credibly distinguish *O'Handley* and persuasive rulings from multiple judges in this District rejecting substantially identical claims.

Kennedy characterizes *O'Handley* as a "one-way[] information sharing case," Opp. at 22, but, as this Court already held, *O'Handley* considered allegations involving far more entwinement between the government and an online platform than Kennedy has alleged here.  TRO Order at 8.  Such allegations included that the government partnered with Twitter to create a special "Partner Support Portal" through which election officials could flag posts for review; Twitter removed flagged posts 98 percent of the time; and the government specifically flagged one of O'Handley's tweets, resulting in prompt action by Twitter to limit user access to the tweet.  62 F.4th at 1154–55.  Even on those allegations, the Ninth Circuit concluded that O'Handley failed to plausibly allege that Twitter was a state actor under either the nexus or the joint action test and affirmed the dismissal of the complaint.  *Id.* at 1160.

Kennedy's allegations are even more deficient than the allegations found deficient in *O'Handley*.  There is nothing akin here to the dedicated "Partner Support Portal" in *O'Handley* through which government officials flag content; no allegations regarding the frequency with which Google takes action on any medical misinformation flagged by the government, and—significantly—no allegation that the government specifically flagged any videos of Kennedy to Google, let alone that it flagged any of the complained-of content at issue in this case.  Indeed, none of Kennedy's allegations or the documents attached to the FAC reveal any government pressure to apply YouTube's misinformation policies to videos of Kennedy.  The lack of any allegation that the government compelled or otherwise prompted Google to takedown videos of Kennedy, in particular, independently dooms his claim because the government must have compelled "the *specific conduct* of which the plaintiff complains" in order for that conduct to be treated as state action.  *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also* Mot. at 17–18

1   (citing additional cases).  Kennedy never contests this lack of specificity, nor can he.

2        For the same reason, Kennedy's alleged "self-censorship" (FAC ¶ 26) and the "chilling

3   effect" on his campaign (Opp. at 23) caused by the removal of videos of him cannot satisfy the

4   state action requirement.  "Self-censorship" does not raise any constitutional concerns if it was the

5   result of *Google*'s own independent decision to remove videos of Kennedy.  Thus, allegations of

6   "self-censorship" do not suffice to show government-compelled state action as to him,

7   specifically, because they leave unaddressed the key issue of whether the *government* caused the

8   removal of content in the first place.

9        The list of pleading defects goes on.  None of the documents attached to the FAC contain

10  any coercive directive or instruction from the government to Google to develop a vaccine

11  misinformation policy.  To the contrary, the judicially noticeable record reveals that Google had

12  policies prohibiting vaccine misinformation long before any alleged pressure by the Biden

13  Administration ever occurred.[1]  And apart from that, none of Kennedy's allegations or the

14  documents attached to the FAC reveal anything resembling the "partnership . . . regarding

15  vaccine-related dissent" described in Kennedy's Opposition.  Opp. at 22.  A review of the April

16  2021 email Kennedy highlights in his Opposition (and which the Court previously considered at

17  the TRO stage), *id.*, shows White House official Rob Flaherty asking for information regarding

18  "top trends that [Google has] seen in terms of misinformation around the [COVID-19] vaccine,"

19  the "metric[s]" Google had selected for reducing misinformation, and the effectiveness of various

---

20  [1] The Court should overrule Kennedy's objections to Google's request for judicial notice of its
    publicly accessible misinformation policies.  *See* Mot. at 5 n.2 (requesting judicial notice of
21  Google's publicly accessible COVID-19 misinformation policies).  Kennedy concedes that it is
    entirely permissible for the Court to take judicial notice that a party's website exists and makes
22  certain representations about the company to the public.  *See* Opposition to Defendants' Request
    for Judicial Notice at 2 (quoting *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135,
23  1146 (S.D. Cal. 2022)).  Here, it is relevant and not reasonably subject to dispute that Google has
    maintained on its website a COVID-19 misinformation policy since 2020, that its COVID-19
24  misinformation policy addresses vaccine misinformation, and that its COVID-19 policy has, since
    the beginning, disallowed content that "contradicts local health authorities' (LHAs) or the World
25  Health Organization's (WHO) guidance about specific health conditions and substances."  *See*
26  COVID-19 Medical Misinformation Policy (May 2020), *available at*
    https://web.archive.org/web/20200521042253/https://support.google.com/youtube/answer/989178
27  5; COVID-19 Medical Misinformation Policy (Dec. 2020), *available at*
    https://web.archive.org/web/20201211052515/https://support.google.com/youtube/answer/989178
28  5.

"interventions" Google had implemented.  FAC Ex. E.  Flaherty made clear that the government was not recommending—let alone requesting or requiring—that Google remove any content, stating: "We certainly recognize that removing content that is unfavorable to the cause of increasing vaccine adoption is not a realistic—or even good—solution." *Id*.  In other words, even when viewed in the light most favorable to Kennedy, the April 2021 email, other documents attached to the FAC, and the FAC allegations show little more than government officials inquiring about Google's *ongoing* efforts to combat misinformation and expressing concerns regarding the impact of such misinformation.  *See* FAC Exs. G, H, J.  They reflect the type of "consultation and information sharing" deemed insufficient in *O'Handley* and multiple other decisions from this District.  TRO Order at 7; *see O'Handley*, 62 F.4th at 1158–60; *Hart v. Facebook Inc.*, No. 22-cv-737-CRB, 2023 WL 3362592, at *3 (N.D. Cal. May 9, 2023) (*Hart II*).  This is not akin to the kind of scenario envisioned by the Ninth Circuit in *O'Handley* when it described situations that could raise a constitutional problem, like a private company's coerced agreement to "serve as an arm of the government."  *O'Handley*, 62 F.4th at 1159.

Kennedy's allegations that President Biden accused platforms of "killing people" by not removing misinformation and that the White House raised the prospect of eliminating Section 230 immunity, FAC ¶¶ 31–32, 34, do not plausibly support coercion or any other state action theory either.[2]  As the Motion sets forth (Mot. at 2, 13–14), multiple courts in this District have rejected identical or near-identical allegations as insufficient for state action.  *See, e.g.*, *Hart I*, 2022 WL 1427507, at *8 (rejecting plaintiff's allegation that President Biden's comments about social media companies "killing people," in light of ongoing debates over the potential removal of Section 230 immunity, amounted to threats, finding such allegations "conclusory" and not "remotely close to coercion"); *ICAN*, 582 F. Supp. 3d at 716–17 (rejecting as insufficient to establish state action allegations regarding threats to eliminate Section 230 immunity by presidential candidate Biden and members of Congress).  Kennedy's vague suggestion that

---

[2] Kennedy conceded at the TRO stage that there is no evidence of coercion on these facts.  TRO Order at 6 ("Plaintiff's counsel, at oral argument, conceded that the evidence provided in support of his application does not show that the government coerced Google. . . .").  He should not be permitted to take an inconsistent position now.  Mot. at 10.

1    executive branch officials, unlike legislators, have direct regulatory authority over companies like

2    Google does not alter the analysis.  Kennedy has not alleged any specific regulatory action the

3    executive branch threatened to take against Google, much less with respect to the specific

4    YouTube videos referenced in the FAC.

5         In the face of these deficiencies, Kennedy argues that this case is distinguishable from

6    *O'Handley* because Google removes "speech that public health authorities . . . deem false,

7    misleading, or dangerous."  Opp. at 19.  As explained above, Google's choice to rely on local

8    health authorities' guidance as part of YouTube's medical misinformation policies, while

9    independently deciding how to enforce them, does not give rise to a plausible inference of state

10   action, and multiple courts have rejected near-identical state action claims involving COVID and

11   vaccine-related misinformation.  *Hart I*, 2022 WL 1427507, at *7; *Hart II*, 2023 WL 3362592, at

12   *3; *Children's Health Def.*, 546 F. Supp. 3d at 930; *Daniels*, 2021 WL 1222166, at *5.  It certainly

13   is not reasonable to infer from this that Google has "agreed to serve as an arm of the government,"

14   as Kennedy suggests.  Opp. at 19.

### 3.    Kennedy's Analogies to Pre-*O'Handley* Cases and an Out-of-Circuit Decision Cannot Save His Claim

16

17        Faced with binding case law in *O'Handley* and other decisions that foreclose his claim,

Kennedy attempts to analogize this case to Supreme Court and Ninth Circuit decisions pre-dating

18

*O'Handley*.  Those cases are not on point and have been expressly distinguished by subsequent

19

Ninth Circuit decisions based on rationales equally applicable to this case.

20

21        The first case Kennedy cites, *Brentwood Academy v. Tennessee Secondary School Athletic

*Ass'n*, 531 U.S. 288 (2001), found that a private entity whose bylaws required it to be run by

22

public officials and whose purpose was to provide standards for public school athletic

23

competitions was engaged in state action.  *Id*. at 298–301.  *Brentwood* is easily distinguishable

24

from this case, which involves no similar "public entwinement in the *management and control* of"

25

Google.  *Id*. at 297 (emphasis added).

26

27        Kennedy points to *Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002), a case that considered state

action in the context of a private lessee of public outdoor area owned by a city, to suggest that

28

1  YouTube performs an "exclusively and traditionally public function" by hosting content on its

2  platform.  Opp. at 15.  This analogy fails because the Ninth Circuit has expressly distinguished

3  *Lee* to hold that "YouTube does not perform a public function by inviting public discourse on its

4  property."  *Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020); *see infra* Part II.A.4.

5      Kennedy also invokes *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 753 (9th Cir.

6  2020).  *Rawson* concerned the unique circumstance of state-ordered involuntary commitment,

7  where the state employs private physicians and facilities to fulfill its Eighth and Fourteenth

8  Amendment obligations to care for the committed individual.  *Id.*  No similar facts are at issue

9  here.  In its TRO Order, this Court rightly explained that *O'Handley* considered and "declined to

10  extend" *Rawson* to much more analogous facts to this case, limiting *Rawson*'s relevance here.

11  TRO Order at 7–8; *O'Handley*, 62 F.4th at 1158 n.2.

12      Lacking any support in Ninth Circuit law, Kennedy turns to the out-of-state Fifth Circuit

13  decision in *Missouri v. Biden*, No. 23-30445, 2023 WL 6425697 (5th Cir. Oct. 3, 2023).  The

14  Supreme Court recently granted certiorari and issued a stay of the injunction in that case, which

15  enjoined government officials from communicating on certain issues with online platforms.  Order

16  Granting Application for Stay, *Murthy v. Missouri*, No. 23A243 (S. Ct. Oct. 20, 2023).  This Court

17  appropriately noted in its TRO Order that the district court's decision in *Missouri* was of no

18  moment in light of the governing, on-point precedent in *O'Handley*.  TRO Order at 5.  The Fifth

19  Circuit's partial affirmance, to the extent it survives Supreme Court review, does not change

20  matters.  If anything, it confirms that this Court should decline to follow *Missouri* because it was

21  decided under a materially different standard than *O'Handley*.  *Compare O'Handley*, 62 F.4th at

22  1156–57 (nexus test requires a threat of "adverse action," such as a "threat[] to prosecute" or

23  "equivalent threats"), *with Missouri*, 2023 WL 6425697, at *18 ("tone" and reasonable perception

24  of a "threat worth heeding" are sufficient for coercion).  Indeed, Kennedy ignores that Judge

25  Breyer recently considered much of the same evidence from *Missouri*, including the deposition

26  testimony of CDC official Carol Crawford, and various emails from White House officials to

27  Facebook—which could be read as more aggressive than any of the communications involving

28  Google—and held that under *O'Handley* such evidence did "not establish joint action or

government coercion." *Hart II*, 2023 WL 3362592, at *2–4.

In addition, *Missouri* has little to say about Google's actions specifically, much less as to any YouTube content containing Kennedy's speech.  Because the defendants were government officials, rather than any private platform, the Fifth Circuit elected to treat evidence involving various platforms interchangeably, not distinguishing among the various communications individual platforms had with the government.  *See, e.g.*, *Missouri*, 2023 WL 6425697, at *23–24 (discussing communications exchanged with "the platforms").  And the opinion does not once mention Kennedy or his content.  The Sixth Circuit recently distinguished *Missouri* on these grounds, noting that *Missouri* discussed "these issues . . . on a more comprehensive scale, not based on actions with respect to discrete individual plaintiffs," and that the plaintiffs in its case "fail to adduce facts demonstrating that the decisions Twitter made when it enforced its own COVID-19 policy [as to them] did not result from its 'broad and legitimate discretion' as an independent company." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 492, 497, 498 n.8 (6th Cir. 2023).  The question before the court in *Changizi* was one of standing, but the relevant analysis—whether "Twitter's actions [are] traceable to the federal government," *id.* at 494—is part and parcel of the state action doctrine and does not, in any event, undermine *Changizi*'s cogent rationale for distinguishing *Missouri*.

### 4.     Binding Precedent Forecloses Kennedy's Public Function Argument

Kennedy's argument that YouTube engages in state action simply by serving as a platform for political speech is squarely foreclosed by binding precedent, as set forth in the Motion.  Opp. at 20; Mot. at 9–10.

As the Ninth Circuit explained in *Prager*, the operative question is whether YouTube conducts a "public function"—i.e., a function that is "traditionally the exclusive prerogative of the [s]tate," akin to running an election or operating a company town.  951 F.3d at 997–98.  *Prager* held that "hosting speech on a private platform" is not the traditional exclusive prerogative of the government, and therefore, is not a public function.  *Id.* at 998; *see also Halleck*, 139 S. Ct. at 1930 ("Providing some kind of forum for speech is not an activity that only governmental entities have traditionally performed.").  Thus, "a private entity who provides a forum for speech is not

1    transformed by that fact alone into a state actor." *Manhattan Cmty. Access Corp. v. Halleck*, 139

2    S. Ct. 1921, 1930 (2019).[3]

3           The same is equally true of hosting *political* speech on a private platform.  Hosting

4    political speech is no more the exclusive prerogative of the government than hosting speech more

5    generally.  *Prager* itself dealt with political speech; the plaintiff in that case "posted hundreds of

6    its videos on a broad range of socio-political issues on YouTube," in furtherance of its stated

7    mission "to provide conservative viewpoints and perspectives on public issues."  951 F.3d at 995.

8    Thus, YouTube "does not perform a public function by inviting public discourse on its property,"

9    whether that discourse is political speech or otherwise.  *Id.* at 998.

10          Kennedy's reliance on *Lee v. Katz*, *see* Opp. at 20, does not help him.  *Prager* expressly

11   distinguished *Lee*, explaining that, "[i]n *Lee*, the parties conceded that the property, which was

12   owned by the municipal government, was a traditional public forum.  No such concession or

13   government involvement exists here."  *Id.* at 998 n.4.  The court concluded that although

14   regulation of speech in a *public* forum—as in *Lee*—may constitute state action as a "quintessential

15   public function," regulation of speech in a private forum—as in *Prager* and as here—decidedly

16   does not.  *Id.* at 998.

17          Kennedy's attempts to distinguish this case from *Prager* based on his allegations of "deep

18   entwinement" between Google and government officials likewise fails.  Opp. at 20.  Such

19   allegations cannot overcome *Prager*'s clear command that, "to create a public forum, the

20   *government* must intentionally open up the property to public discourse" and "YouTube is not

21   owned, leased, or otherwise controlled by the government."  951 F.3d at 999.  Just as "PragerU

22   cannot avoid the state action question by calling YouTube a public forum," *id.*, Kennedy cannot

23   avoid the state action question by calling YouTube a public forum.[4]

24

25

---

26   [3] Notably, Kennedy relies on the *Halleck* dissent to support his argument that YouTube is
     performing a public function by "disseminating political speech."  Opp. at 20–21.

27   [4] Nor can Kennedy circumvent the traditional public function analysis by pointing to YouTube's
     popularity, Opp. at 21, as that argument, too, is foreclosed by *Prager*.  *See* 951 F.3d at 998 ("That
28   YouTube is ubiquitous does not alter our public function analysis.").

1    For similar reasons, whether or not a website qualifies as a "public forum" as that term is

2    used in California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, is inapposite to the state

3    action inquiry.  Opp. at 20 n.2 (citing *Chaker v. Mateo*, 209 Cal. App. 4th 1138 (Ct. App. 2012),

4    and *Summit Bank v. Rogers*, 206 Cal. App. 4th 669 (Ct. App. 2012)).  As used in California's anti-

5    SLAPP statute, the term "public forum" has been accorded a liberal construction to include any "a

6    place that is open to the public where information is freely exchanged," including websites.

7    *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1006 (Ct. App. 2001).  Courts have

8    specifically rejected the argument that a website deemed a public forum for anti-SLAPP purposes

9    is transformed into a state actor for constitutional purposes.  *See hiQ Labs, Inc. v. LinkedIn Corp.*,

10   273 F. Supp. 3d 1099, 1117 (N.D. Cal. 2017) (rejecting argument that Internet website is subject to

11   the California Constitution even if it is a "public forum" for purposes of the anti-SLAPP statute

12   because "the anti-SLAPP statute protects conduct beyond constitutionally protected speech

13   itself"); *Prager Univ. v. Google LLC*, No. 19CV340667, 2019 WL 8640569, at *6 (Cal. Super. Ct.

14   Nov. 19, 2019) (same; the "protections afforded by the anti-SLAPP statute are not coextensive

15   with the categories of conduct or speech protected by the First Amendment or its California

16   counterparts").

17       **B.      Kennedy Mounts No Meaningful Defense of His State Law Claim**

18   To the extent it exercises supplemental jurisdiction over Kennedy's state law claim,[5] this

19   Court can readily dismiss it, as Kennedy fails to raise any credible opposition to Google's

20   arguments that Section 230 squarely bars this claim and that no court has applied the *Pruneyard*

21   exception to a case like this one involving an Internet platform.

22           **1.      Kennedy Cannot Avoid Section 230(c)(1)'s Preemptive Scope**

23   Kennedy's bald assertion that Section 230 does not apply because he "does not seek to hold

24   Google liable as a publisher or speaker," Opp. at 27, is plainly insufficient to overcome the multiple

25   Ninth Circuit and other district court authorities Google cited showing otherwise.

26   In particular, Ninth Circuit cases like *Barnes v. Yahoo!, Inc.* and *Fair Housing Council of*

27

28   _____
     [5] As discussed in Google's opening brief, this Court has discretion to decline to exercise
     supplemental jurisdiction over this claim if it dismisses the federal claim.  Mot. at 18.

1   *San Fernando Valley v. Roommates.com, LLC* clearly establish that claims seeking to impose

2   liability on the basis of the removal or exclusion of content fall squarely within Section 230's

3   preemptive scope.  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) ("[R]emoving

4   content is something publishers do, and to impose liability on the basis of such conduct

5   necessarily involves treating the liable party as a publisher of the content it failed to remove.");

6   *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71

7   (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material

8   that third parties seek to post online is perforce immune under section 230.").  Kennedy offers no

9   response to these and the many other decisions Google cited holding the same.  *See Sikhs for*

10  *Justice "SFJ", Inc. v. Facebook*, 144 F. Supp. 3d 1088, 1094–95 (N.D. Cal. 2015), *aff'd* 697 F.

11  App'x 526 (9th Cir. 2017); *Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 WL

12  6540452, at *8 (N.D. Cal. Nov. 2, 2016); *Green v. YouTube, LLC*, No. 18-cv-203-PB, 2019 WL

13  1428890, at *2, 6 (D.N.H. Mar. 13, 2019).

14       Kennedy cites only an out-of-circuit Fifth Circuit decision, *NetChoice, LLC v. Paxton*, that

15  is pending review by the Supreme Court.  49 F.4th 439 (5th Cir. 2022), *cert. granted* No. 22-555

16  (S. Ct. Sept. 29, 2023).  *Paxton* cannot prevail over the controlling Ninth Circuit precedent

17  discussed above that compels the conclusion that Kennedy's state law claim seeks to hold Google

18  liable as a publisher.  And *Paxton* itself only considered whether online platforms are entitled to

19  First Amendment protections with respect to their editorial decisions; it did not address whether a

20  claim arising from the removal of content falls within the scope of Section 230(c)(1) protection.

21  *Id*.  In any event, *Paxton* is an outlier opinion that is inconsistent with Supreme Court precedent,

22  as other courts have explained.  *See NetChoice LLC v. Att'y Gen., Fla.*, 34 F.4th 1196, 1210 (11th

23  Cir. 2022), *cert. granted sub nom. Moody v. NetChoice, LLC*, No. 22-277 (Sept. 29, 2023);

24  *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022); *Volokh v. James*, No. 22-

25  CV-10195 (ALC), 2023 WL 1991435, at *6 (S.D.N.Y. Feb. 14, 2023).

26       Kennedy's argument that his state law claim is not preempted by Section 230 fails.

27  Section 230 "expressly preempts any state law claims inconsistent with section 230(c)(1)'s

28  unequivocal protection."  *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1032 (Ct. App.

2022); *see also Barnes*, 570 F.3d at 1100.  In *Prager*, the California Court of Appeal held that "Section 230(c)(1) and (e)(3) reflect the unambiguous exercise of Congress's constitutional power to preempt state laws."  *Prager*, 85 Cal. App. 5th at 1043.  It went on specifically to hold that the plaintiff's claim under the California Constitution's free speech clause was preempted by Section 230(c)(1) and (e)(3) because it sought to hold defendants liable for moderation decisions regarding the audience to which videos would be published. *Id.* at 1033; *see also Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 605–06 (S.D.N.Y. 2020).  By the same rationale, Kennedy's California Constitution free speech claim is preempted by Section 230.  His mere assertion that the claim is "consistent" with Section 230 because it "does not treat Google as a publisher of information," Opp. at 29, fails for the reasons discussed above; namely, that numerous binding authorities hold that claims like his seeking to hold platforms liable for the removal of content in fact seek to treat the platform as a publisher.

Finally, Kennedy spends the bulk of his discussion of Section 230 focused on subsection (c)(2), a different subsection that offers protection from civil liability for the good faith removal of certain categories of third-party material.  *See Barnes*, 570 F.3d at 1105 ("Subsection (c)(2) . . . provides an additional shield from liability" distinct from (c)(1)).  These arguments are misdirected, as Google has not asserted immunity under (c)(2).  It is therefore not necessary for Google to show that its removal of videos of Kennedy was in "good faith" or that the speech it removed was "obscene, lewd, lascivious, filthy, excessively violent, [or] harassing."  *See, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 884 (N.D. Cal. 2022) ("the Court follows the approach taken by others [in] this district and applies Section 230(c)(1) to allegations of removal of a user's content. Because Section 230(c)(1) applies here, [] Twitter is not required to demonstrate good faith" under (c)(2) (collecting authorities)).

Kennedy does not dispute that his claims are aimed at Google's removal of videos of him.  Nor does he dispute that the other requisites of Section 230 have been met, namely, that Google and YouTube are providers of interactive computer services and that the content at issue was provided by another information content provider besides Google.  Accordingly, all the requirements of Section 230 are satisfied and his state law claim is barred.

### 2. Kennedy Concedes This Claim Is Unprecedented

Even if Kennedy's state law claim were not barred by Section 230, it fails on the merits. Kennedy admits that no court has extended *Pruneyard* to the Internet and, remarkably, invites this Court to be the first to do so. Opp. at 29–30. This Court should decline the invitation to break new ground in this area of California constitutional jurisprudence. The case Kennedy describes as having "discussed the possibility" of extending *Pruneyard* to the Internet unequivocally declined to do so, expressing "doubts about whether *Pruneyard* may be extended wholesale into the digital realm of the Internet" and noting "there are a host of potential 'slippery slope' problems that are likely to surface were *Pruneyard* to apply to the Internet." *hiQ Labs*, 273 F. Supp. 3d at 1116. This Court should follow *hiQ* and the multiple other courts that have rejected similar invitations to extend the *Pruneyard* principle to Internet companies. *See* Mot. at 22 (citing cases).

### C. This Court Should Reject Kennedy's Attempt to Strip Google of Its First Amendment Rights

Kennedy's claims are independently barred by *Google*'s First Amendment rights. Established case law squarely rebuts Kennedy's argument that Google and YouTube do not "deserve" First Amendment protection for their content removal decisions. *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022); *see Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974); *NetChoice*, 34 F.4th at 1210.

Contrary to Kennedy's argument (Opp. at 23–24), the existence of Section 230 protection over Internet companies' content moderation decisions is entirely consistent with the First Amendment. Barring liability for claims that seek to hold certain Internet companies liable for conduct they engage in as publishers, as Section 230 does, does not denude such companies of First Amendment protections. 47 U.S.C. § 230(c)(1). If anything, Section 230's protections enhance and bolster companies' ability to engage in editorial control. *See Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019); *NetChoice*, 34 F.4th at 1210; *see also Batzel v. Smith*, 333 F.3d 1018, 1028 (9th Cir. 2003) (Congress enacted Section 230 "to further First Amendment . . . interests on the Internet").

Kennedy argues that Google exercises "virtually no editorial control or judgment" because

it uses algorithms to screen out content.  Opp. at 24.  As an initial matter, Kennedy offers no

allegations or evidence to substantiate his assertion.  Even assuming the truth of his assertion, it

does not matter for the First Amendment analysis whether Google relies on humans or human-

designed algorithmic tools to screen content; either way, Google is plainly exercising its discretion

over content moderation decisions in a manner protected by the First Amendment, as courts have

specifically held.  *See NetChoice*, 34 F.4th at 1217–18, 1228 (concluding that content moderation,

including use of algorithms, is expressive First-Amendment-protected activity); *Zhang v.*

*Baidu.com Inc.*, 10 F. Supp. 3d 433, 437–43 (S.D.N.Y. 2014) (holding that a lawsuit "seek[ing] to

hold [website] liable for . . . a conscious decision to design its search-engine algorithms to favor

certain expression on core political subjects over other expression . . . would plainly violate the

fundamental rule of protection under the First Amendment" (cleaned up)).

Kennedy argues that First Amendment cases like *Tornillo* and *Pacific Gas & Electric Co.*

*v. Public Utilities Commission*, 475 U.S. 1 (1986), are distinguishable because those cases

involved concerns that the speaker's own message would be affected by the speech it was forced

to accommodate and that the challenged action would chill speech.  Both concerns apply equally

to this case.  Forcing Google to carry medical misinformation directly affects its own message,

because it contradicts Google's stated policies regarding the types of content that are permitted on

YouTube and constrains its freedom to communicate its disagreement with such content by

removing it.  *See NetChoice*, 34 F.4th at 1215–16 (holding that restricting social-media platforms'

content moderation policy enforcement interferes with those platforms' speech and is likely to

chill platforms' protected speech).  It would likewise chill speech because it interferes with

Google's exercise of discretion in the enforcement of its content moderation policies and threatens

to undermine user goodwill and trust in the YouTube platform.  *Id.* at 1230–31.

In sum, Google's strong First Amendment interest in the application of its medical

misinformation policies provides an independent basis for dismissing Kennedy's claims.  *See*

*O'Handley*, 579 F. Supp. 3d at 1186–88.

### III.   CONCLUSION

For these reasons, the Court should dismiss the FAC with prejudice.

1    DATED:  October 24, 2023               MUNGER, TOLLES & OLSON LLP

2

3                                           By:   _____/s/ Jonathan Blavin_____

4                                                    JONATHAN H. BLAVIN
                                              Attorneys for Google LLC and YouTube, LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28